RICHARD ROE, casual ejector, and C. LOPEZ, tenant in possession, plaintiffs in error, *vs.* JOHN DOE, *ex demise*, LEMUEL T. DOWNING, administrator, *et al.*, defendants in error.

1. An action of ejectment is not strictly an action for a *tort*, but is a mixed action, partly and nominally for a *tort*, but mainly to try title to land.

2. Where, in a declaration in ejectment, the ouster is alleged as occurring since the 1st of June, 1865, but the proof shows the defendant to have been in possession before the 1st of June, 1865, the action is not barred by the Act of March 16th, 1869, because not brought within three months after the 16th March, 1869.

3. No damages or *mesne* profits can be recovered behind the 1st of June, 1865, but the defendant, if he defends by his possession under color alone, must show *that* possession to have been continued seven years before bringing the suit.

Ejectment. Statute of Limitations. *Mesne* profits. Prescription. Tried before Judge HARRELL. Muscogee Superior Court. May Term, 1871.

John Doe, on the several demises of Lemuel T. Downing, as administrator of Sebastian Hoffman, deceased, of Felix McArdle, as administrator of Thomas Brassill, deceased, and of Catherine McArdle, brought ejectment for a lot of land in the city of Columbus, in the county of Muscogee, known as number seventy-seven, lying on the west side of Broad street, fronting easterly on said street, forty-five feet north and south, and extending back, westerly of the same width, one hundred and forty-seven feet ten inches, containing three-sixteenths of an acre, more or less, against Richard Roe, casual ejector, and C. Lopez, tenant in possession. The ouster is laid in the counts, under the first two demises, on January 11th, 1864, and in the count, under the last, on October 11th,

1868.    The declaration was filed in office on November 8th, 1870.

The defendants pleaded the general issue, and the statute of limitations.

Upon the trial, the following evidence was introduced for the plaintiffs:

Henry McCauley, sworn: Knew Thomas Brassill from 1855 until his death, in 1868; Catherine McArdle is his only surviving sister; he had no brothers, wife or children. Am acquainted with the lot sued for; Sebastian Hoffman was in possession in 1855, and remained in possession until his death, which occurred about the beginning of the war; the rent since January 1st, 1867, was worth $200 per annum. Lopez was put in possession by Brassill about October 1st, 1863, and remained in possession until his death, in 1868. Witness was present, in the spring or summer of 1866, when Brassill, in the presence of James O'Connor and witness, demanded possession of the lot of Lopez; Lopez refused to deliver possession; witness was in possession of a part of the lot; did not deliver it up to Lopez; he gave it to witness, and afterwards took some proceedings to eject him; witness gave some kind of a bond, by which he held the land; the attorney for Lopez dismissed the case during a recess of Court.

Plaintiff introduced a deed to the lot from William H. Harrell to Sebastian Hoffman, dated January 22d, 1840, recorded January 24th, 1840.

Also, letters of administration upon the estate of Sebastian Hoffman, issued to Lemuel T. Downing on January 14th, 1862.

Also, deed from Lemuel T. Downing, administrator, to Thomas Brassill, to said property, dated May 4th, 1863, recorded September 14th, 1863.

Also, letters of administration on the estate of Thomas Brassill, deceased, issued to Felix McArdle on December 7th, 1868.

Also, the execution docket, showing two executions against said Felix McArdle, administrator, dated January 30th, 1871,

based upon judgments rendered at the December Term, 1870, of Muscogee Superior Court, one for $54 35, principal, besides interest and costs, the other for $208 70, principal, besides interest and costs.

Felix McArdle, sworn: Brassill put Lopez in possession of the premises in dispute about October 1st, 1863; Catharine was always recognized as the sister of Thomas Brassill; never heard him speak of half brothers and sisters; witness had seen a man in the city of Columbus who passed for his father; Hoffman died before the war; thinks he lived on the lot in dispute when he died; has known Brassill since 1855.

Plaintiff closed his case, and defendants introduced the following testimony:

......... Gettinger, sworn: Lopez went in possession in 1863; does not know that he claimed the property as his own; he lived on the place; knew Brassill in his life; never heard him say anything about buying the property.

......... Sharp, sworn: Lopez went into possession in the fall of 1863 or first of 1864; he always claimed the lot as his own; witness went to Brassill to rent said property; Brassill said he had nothing to do with it, as the lot belonged to Lopez; Lopez was present at the time, but was not in possession- Brassill said he bought the property for Lopez.

S. H. Hill, sworn: Lopez was in possession in 1864, during Brassill's life; witness inquired of Brassill, once in the presence of Lopez, what he asked for the place; Brassill responded that he had nothing to do with it, and that witness must see the old man, pointing to Lopez, as the place belonged to him.

......... Booher, sworn: Lopez went into possession in 1864, during the life of Brassill; witness asked Brassill if he would sell the place; he responded that he could not sell it, as the place belonged to Lopez; witness asked him to see Lopez for witness, which he promised him to do.

Plaintiff, in rebuttal, read in evidence a bill in equity, filed in office on April 14th, 1866, returnable to the May

Term, 1866, of Muscogee Superior Court, in which said C. Lopez was complainant, and Thomas Brassill defendant, containing substantially the following allegations :

That in 1861 complainant formed a partnership with defendant for the purpose of manufacturing cigars and the purchase and sale of tobacco ; that defendant received all the proceeds of said business, and in 1863 informed complainant that he, defendant, then had in his hands over $20,000 in Confederate money, the property of complainant; that under instructions from complainant defendant purchased a house and lot with complainant's said money, paying $5,800 for the same, from Lemuel T. Downing, administrator upon the estate of Sebastian Hoffman ; that defendant informed complainant that he had purchased said property for him, and that complainant could take possession of the same ; that soon after the purchase of said property, which occurred early in the year 1863, complainant asked defendant, who was then sick in bed, as to the title to said lot, and was answered that there was no trouble about it, and that as soon as he, defendant, could attend to business, (being then confined to his bed,) he would turn over to complainant the title papers to said property ; that complainant went into possession of said lot in the year 1863, and has remained in possession until the present time; that soon after the partnership between complainant and defendant was dissolved, which occurred in the month of April, 1865, complainant called upon defendant for a settlement of their partnership business, and for the title papers to said lot ; that under one pretense or another said defendant has postponed the matter, and complainant has discovered, by a reference to the records of Muscogee county, that said defendant took the title to said lot in his own name.   Prayer : that defendant may be decreed to be a trustee, holding the title to said property for the benefit of complainant ; that he may further be decreed to execute a deed to said property conveying the same to complainant; that the writ of subpœna may issue.

Plaintiff then introduced the verdict of the jury, which

was in favor of the defendant, and the judgment of the Court based thereon.    Verdict and judgment rendered at November Term, 1869, of Muscogee Superior Court.

Also, the judgment of the Superior Court rendered at November Term, 1870, making the judgment of affirmance of the Supreme Court in said case the judgment of that Court.

Plaintiff reintroduced Felix McArdle, who testified as follows : The estate of Brassill is in debt about $6,000, and has no personalty with which to pay the debts ; the land sued for is now all the property left belonging to the estate.

Defendants then introduced receipts in full of the executions against Felix McArdle, administrator, placed in evidence by plaintiff.

The jury returned a verdict for the defendants.    Plaintiff moved for a new trial upon the following grounds, to-wit :

1st. Because the said verdict is strongly and decidedly against the evidence, and absolutely without any evidence to support it.

2d.  Because said verdict is against law.

The Court granted a new trial, and defendants excepted and now assign said ruling as error.

W. Dougherty; Blandford & Crawford; W. F. Williams; B. A. Thornton, for plaintiffs in error.

L. T. Downing, for defendant.

McCay, Judge.

Mr. Chitty says that the action of ejectment is neither a personal nor a real action, but a mixed one—partly to try titles, and partly for damages, though, for many years, the damages were only nominal, say a shilling, the real recovery being the land : 1 Chitty's Plead., 188.  And, until our Act of 1834, this was the law of Georgia.  Since then, the recovery is also for the *mesne* profits, though it has always been the practice to introduce a special count for this purpose, aban-

doning the fiction. The real object of the action is to recover the land, and it is only as a fiction that it is for trespass.

We have, in Georgia, no statute of limitations for such an action. We attain the same end by our law of prescription, which gives the person in possession for seven years a title. And yet the Code, which has no period of limitations for ejectment, has a provision that all actions for trespass upon, or damages to realty shall be brought within four years after the right of action accrues. According to the argument of the plaintiff in error, an action of ejectment is barred, under the Code, in four years. We do not think it was the intention of the codifiers to include the action of ejectment under the head of actions of trespass. Nor was it the intent of the Act of 1869 to include it within the term *torts*. It is not the natural proper meaning of the word. No lawyer, in the ordinary use of the word *tort*, intends to include actions of ejectment, however well he may know that it has that form.

It is an action to try titles to land—a fictitious proceeding, in which John Doe alleges that, having leased from A B certain land, Richard Roe, with sticks and stones, drove him out, and did him great damage. This looks very tortious; but the writ is to be served on the tenant in possession, and he is required by law (new rules of Court, section 25,) to admit, in effect, everything charged against him, to-wit: lease, entry and ouster. Having done this, admitted the trespass, he may defend—that is, the *real action* goes on.

The count for *mesne* profits is, no doubt, within the Act of 1869. It has always been held in this State not to have the same statutory period of limitations as the action to try titles. We cannot but think that if it had been intended to include the action of ejectment within this Act of 1869, considering the great detail, which is a marked feature of the Act, some other and more definite language would have been used than the words, "all actions for *torts*," and so thinking, we affirm the judgment.

Judgment affirmed.