TIMOTHY *et al. v.* CHAMBERS *et al.*

1. Where husband and wife sold and conveyed homestead land secured under the constitution of 1868, with no leave so to do, that the beneficiaries of the homestead used and enjoyed the proceeds of the sale will not bar a recovery of the land, but money thus used and enjoyed may be set off against mesne profits for which the purchaser is liable.

2. The wife's deed, with or without warranty, if it has no effect as a conveyance of title, will not estop her as to her interest in the homestead premises in an action to recover the land on the homestead right. Though she may be bound to respond to her warranty, her own property, not the homestead itself, must be looked to for satisfaction.

3. Liberal presumptions are indulged in favor of the regularity of homestead proceedings. A proper order to the surveyor will be presumed where the ordinary has approved the plat returned to him; and approval of the "homestead" means substantially approval of the plat and the schedule conformably to section 2009 of the code.

4. The surveyor's affidavit that the plat "is a correct plat" means, in substance, that the land is correctly platted and laid off, and is a sufficient affidavit under section 2008 of the code.

5. The law does not require the plat to be recorded in the county in which the land lies, but only in the county in which the jurisdiction to secure the homestead is exercised. Code, §2009.

April 23, 1890.

Ejectment. Homestead. Set-off. Title. Estoppel. Presumptions. Evidence. Jurisdiction. Practice. Before Judge JENKINS. Madison superior court. September term, 1889.

Robert G. Chambers and his wife Eliza, suing for the use of Eliza and the minor children of the two, brought suit on February 12th, 1889, against A. R. Elliott and others, for a tract of land alleged to be in Madison county, and for rents from January 1st, 1885. In addition to the general issue, the defendants pleaded that in 1884, the land was sold and conveyed by Chambers and his wife to Elliott, who paid them for it $1,000, its full value; which sum was applied to the use and benefit of the beneficiaries of the homestead, who are now suing defendants; by which purchase the beneficiaries have already received and had the full benefit of the full value of the homestead property; and therefore the sale should be confirmed by proper judgment of court, and in equity and good conscience plaintiffs should be decreed to pay defendants so much of the sum paid by Elliott as had been applied to their benefit, before any judgment for the land or any interest therein be entered.

Also that the husband and wife by deed conveyed their interest in the land to Elliott, and thereby passed whatever interest the wife had as a beneficiary; and if any recovery can be had, it is only the homestead interest of the minor children; and that if plaintiffs have any interest, it is capable of being estimated in money, and the interest of all parties can be protected by giving the plaintiffs a certain interest in fee, the

remainder to vest in defendants, who pray that a verdict and judgment be taken and molded so as to make such division of the property. These pleas, except that of the general issue, were stricken.

Upon the trial it was shown that Chambers had a deed conveying the land to him, dated December 13th, 1869, and describing the land as lying in Madison county. The petition of Chambers for homestead and exemption of personalty under the constitution of 1868, was introduced. It set forth, among other things, that Chambers, a resident of Elbert county, was the head of a family consisting of himself, wife and three minor children, and desired to have set apart and valued a homestead of realty, out of a tract of land lying in the counties of Madison and Hart; and he prayed an order directed to the county surveyor of Madison county and also an order directed to the county surveyor of Madison (?) county, directing them to lay off, plat and value the realty and make return of the same, etc. This petition was filed in the office of the ordinary of Elbert county October 12th, 1875, and was recorded in the office of the clerk of Elbert superior court. The plaintiffs also introduced, as part of the homestead papers, a plat of 179 acres of land adjoining lands of Benj. Tucker and Campbell, with an affidavit made by the county surveyor of Madison county, on October 25th, 1875, that the plat was a correct one of 179 acres of land surveyed for Chambers of Elbert county as a homestead, and was not worth more than $700. This also was recorded in the office of the clerk of Elbert superior court on July 6th, 1883. The "homestead was approved by the ordinary of Elbert county" on October 27th, 1875.

Chambers testified that the land covered by the deed to him was the same laid off and set apart as a homestead for the benefit of himself and family in 1875. He remained in possession until 1884, when he delivered

the same to Elliott, who kept it until he assigned to Shannon. The deed to witness and the plat attached to homestead papers cover the land in dispute. It was worth for rent during 1884, 1885, 1886, 1887 and 1888, $150 per annum. Witness received $200 rent for it the last year he rented it. One of the children has been born since the homestead was taken; another has reached majority; the wife and three minor children are still beneficiaries. Both she and Chambers signed the deed to Elliott to this land on February 29th, 1884, and Elliott paid for it. It is worth from $860 to $900.

The defendant introduced a deed from Chambers and his wife to Elliott, dated February 29th, 1884, conveying the land sued for to Elliott in consideration of $1,200, the land being described as lying in Madison county. Elliott testified that he paid this sum, $1,000 for the land and $200 for mules; in 1884 he received no rent; in 1885 and 1886 he received between fifty and sixty dollars rent, which he considers as much as the land was worth; and in 1887 and 1888 Shannon received the rents as his assignee, and had paid the amount to his creditors. The land is rented for 1889 for 1,500 pounds of lint-cotton, notes therefor being payable to Shannon, assignee.

The jury found for the plaintiffs and their minor children a homestead interest in the premises, and found against Elliott $200 rents for 1885, 1886, 1887 and 1888, and that defendants turn over to plaintiffs the rent notes for 1889. The defendants moved for a new trial on the following grounds:

(1–2) Error in striking the pleas.

(3) Error in allowing the original homestead papers to go in evidence, over objection that it did not appear that any order was ever issued by the ordinary of Elbert county, to whom application was made, for an order to the county surveyor of Hart and Madison coun-

ties, in which lay the land out of which homestead was claimed, to lay off said homestead, nor did it appear from said papers in what county the homestead lay. Further, because the homestead application did not show out of whose land the homstead was claimed; it did not appear that any county surveyor ever certified under oath that the homestead was correctly laid out and platted, nor that the return of any surveyor was ever filed in the office of the ordinary of Elbert county before the homestead was approved; and it did appear that the homestead papers were not recorded in the clerk's office of Elbert county for more than eight years, and were never recorded in Madison county where the land was claimed to be located.

(4) Error in charging: A wife who is one of the beneficiaries of a homestead estate, cannot by deed convey her interest therein at private sale; any such deed is void, and she is not estopped from suing to recover any land conveyed by her during the continuance of the homestead in consequence of any deed of conveyance to said estate made by her at private sale.

(5–6) Verdict contrary to law and evidence.

The motion was overruled, and defendants excepted.

J. P. SHANNON, J. J. STRICKLAND, D. W. MEADOW and HARRISON & PEEPLES, for plaintiffs in error.

MCCURRY & PROFFITT, contra.

BLECKLEY, Chief Justice.

1. The plea that the defendant Elliott had purchased the premises, paid their full value, and that the amount thus paid had been enjoyed by the beneficiaries of the homestead, was not restricted to the mesne profits, but was set up as a defence to the whole action. The homestead provided for by the constitution of 1868, was unlike the exemption which the constitution of 1877 provides for. The former embraced realty as such, and personalty as such; whereas, the latter may

as to the whole value exempted, cover one or the other or both, indifferently. In the scheme of the former, money paid for land unlawfully sold would not take the place of the land,—certainly not unless invested in land and still held in that form. But money would pay rent, and we think it might be set off against mesne profits of the homestead land, if the family got the benefit of the money paid by Elliott as purchase money. Though the plea was properly stricken because it sought to bar the action instead of merely resisting the collection of mesne profits, we direct that the recovery of mesne profits be opened, if the defendants shall, when the *remittitur* is returned and entered, plead this matter as against mesne profits alone. If they fail to do this promptly, this direction will count for nothing. Of course, they must prove, as well as plead, in order to make the set-off effectual.

2. The plea which sought to estop the wife by her deed and warranty was no defence as against her interest in the homestead. She may be liable upon the warranty, but if so, her liability thereon could not be enforced directly or indirectly against her homestead interest. Nothing of the sort was attempted in *Amos* v. *Cosby,* 74 *Ga.* 793. In that case, the action was on the warranty itself, the breach of which consisted in not protecting the land against incumbrances superior to the homestead right. No point was made on the validity of the sale and conveyance of the homestead property. Here the point is made, and surely the wife's warranty that she, in connection with her husband, had the right to sell, would neither create the right nor bar her from denying its existence. If it would, the whole scheme of our law in restraining and regulating the sale of homestead and exempt property would be broken up.

3, 4, 5. The head-notes complete the opinion.

*Judgment affirmed, with direction.*