TAYLOR *et al. v.* JAMES, *and vice versa.*

1. Where a parol agreement between the head of a family and another for the exchange of parcels of realty was so far executed that the former took possession of the land he thus undertook to acquire, dealt with it as a part of his homestead, and relinquished possession of that portion of the homestead exchanged therefor, one who undertook to purchase from the head of the family the entire homestead as such did not acquire any better title to the land added thereto in the manner above stated than to the remaining part of such homestead.
2. An order having been granted by the judge of the superior court authorizing a sale of the homestead for reinvestment and distinctly providing that it should be sold at a.designated price, one who undertook to pur-

chase such homestead or a part thereof was chargeable with notice of the terms embraced in the judge's order. Certainly so when a deed to him from the head of the family expressly recited that the sale was made under and in pursuance of such order.

3. Where the sale was not in accord with the terms of the order, the purchaser did not acquire a valid title to the homestead property, and it was the right of the beneficiaries of the homestead to recover the same, together with mesne profits; but subject in equity to the right of the purchaser to offset against the same so much of the purchase-money paid to the head of the family as was actually used or expended by him in providing necessaries for his family; and also to set off against such mesne profits any additional value to the homestead property brought about by reason of permanent improvements by the purchaser, such additional value to be computed, not at the time the improvements were erected, but at the time of the recovery.

4. A petition brought in the name of the beneficiaries of a homestead estate, seeking to recover realty embraced therein which the head of the family wrongfully attempted to convey, is not void, and is amendable by adding his name as a party plaintiff. It follows that where such a petition is brought within seven years from the date of the attempted conveyance, the law of prescription has no application, notwithstanding more than seven years may have elapsed before the filing of the amendment.

5. In such a case the plaintiffs are not entitled to recover mesne profits for a longer period than four years prior to the filing of the suit.

6. Even if the title to the reversionary interest in homestead property passes under a deed made, while the homestead is in existence, by the person out of whose property the homestead estate was carved, such title can not be asserted in any way until the homestead estate has expired.

7. Some of the foregoing rules were not applied in the trial of the present case, and as this was not done, it should be tried again in the light of what is here laid down.

Argued November 1, — Decided November 30, 1899.

Equitable petition.   Before Judge Sheffield.   Early superior court.   October term, 1898.

*W. C. Worrill* and *P. D. DuBose*, for plaintiffs.
*R. H. Powell* and *W. D. Kiddoo*, for defendant.

Cobb, J.   On October 11, 1897, Mary E. Taylor, in behalf of herself and as next friend for her five minor children, filed an equitable petition against D. W. James and E. T. James, in which she prayed for a recovery of certain described realty which it was alleged had been set apart to her husband James H. Taylor as a homestead, and which had been illegally sold and was in the possession of E. T. James.   By an amendment filed October 8, 1898, James H. Taylor was made a party plain-

tiff to the case.   E. T. James answered the petition, setting
up that he was the owner of the property in dispute, by vir-
tue of a deed from James H. Taylor and his wife, dated Octo-
ber 14, 1890.   The case came on for trial, and during the
progress thereof the plaintiffs announced that they would not
ask any decree against D. W. James, and that his name would
be stricken from the case.   At the trial the following state of
facts was disclosed: On January 31, 1871, James H. Taylor
filed his application addressed to the ordinary of Early county,
praying that an exemption of personalty and a homestead in
certain described realty be set apart to him as the head of a
family.   The realty described in the petition was as follows:
Lot number 3, and all that part of lot number 38 lying east
of Dry creek in the 28th district of Early county, and an un-
divided one-half interest in lots numbers 2, 3, and 4 in the 6th
district.   The surveyor having returned to the court a plat and
having filed with the same the affidavit required by law, the
ordinary, on February 10, 1871, entered his approval upon the
application.   On May 16, 1872, James H. Taylor, with the con-
sent of his wife, made an exchange of lands with R. B. Taylor,
whereby R. B. Taylor received the lots above referred to in the
28th district and James H. Taylor received the undivided one-
half interest of R. B. Taylor in the lots above referred to in the
6th district, and thereafter James H. Taylor and his wife aban-
doned possession of the lots in the 28th district to R. B. Taylor
and took possession of his interest in the lots in the 6th district,
and this interest of R. B. Taylor was thereafter held and treated
as a part of the homestead estate.   On February 26, 1890,
James H. Taylor and his wife made application to the judge of
the superior court for leave to sell the real estate which had
been set apart as a homestead.   The application did not de-
scribe the property, but referred to the petition for homestead for
a description thereof.   In this application it was alleged that
petitioners "can sell said homestead lands for $3,000, and that
they can reinvest said sums in other real estate that will yield
a much better income and be worth a greater sum to petition-
ers and their family."   The prayer of the petition was, that an
order be passed allowing a sale of the homestead and a rein-

vestment upon like uses.    D. W. James was appointed guardian ad litem for the minor children, and united with the petitioners in the prayer for a sale of the homestead.    On February 26, 1890, upon this application the judge passed an order directing a sale of the homestead property and that the proceeds thereof be reinvested upon like uses.    After this order had been granted, James H. Taylor entered into an agreement with Elbert Teatt and Gus Thomas, who were negroes, whereby he agreed to sell the homestead lands to them for $3,000 upon credit, and take their notes for the purchase-money, and give them a bond for titles.    Thereafter, the negroes having failed to pay the purchase-money, Taylor entered into an agreement with E. T. James, whereby James was to pay him $2,000 in cash, and he was to deliver to James the purchase-money notes of the negroes above referred to, and also to convey to him the homestead lands, James agreeing to protect Taylor against any rights which the negroes might have under the bond for titles which Taylor had given to them.    James paid to Taylor the amount stipulated, and on the 14th day of October, 1890, Taylor and his wife executed a deed to him conveying lots numbers 2 and 3 and the east half of lot number 4 in the 6th district of Early county, upon an expressed consideration of $2,000 ; the deed reciting that the lands therein described, with others, had been theretofore set apart as a homestead to Taylor for the benefit of his wife and minor children, and that an order had been granted, after due application in terms of the law, on the 26th of February, 1890, to sell and reinvest, and that the sale was made by virtue of that order. Subsequently to the execution of the deed, James made an arrangement with the negroes to whom Taylor had sold the property, by which the sale to them was rescinded and their notes delivered up to them, and they surrendered the bond for titles to James, which was by him delivered up to Taylor.

The present suit is brought to recover the lands described in the deed from Taylor and his wife to James.    There was evidence tending to show that Taylor had used a portion of the $2,000 paid him by James, in the purchase of necessaries for the support of his family, and that another portion of the

money was used in making a payment on the purchase-price of certain lands in Randolph county and a house and lot in Cuthbert, Georgia, but that no title was ever obtained to either piece of property, for the reason that Taylor, not being able to pay the balance of the purchase-money, surrendered the possession of the house and lot to the person from whom he had attempted to purchase the same, and transferred his bond for titles to the lands in Randolph county to a person to whom he was indebted for supplies for his family, and that neither he nor any one of the beneficiaries is now in possession or entitled to any interest in or possession of either of the pieces of property referred to; that his family did for some time reside in the house in Cuthbert; that he attempted to farm on the lands in Randolph county while he was in possession of them, but that he did not make anything on the same.  The judge submitted to the jury three questions of fact:  (1) How much was paid by E. T. James to Taylor for the land sued for, at the time it was delivered?  The answer was, $2,000.  (2) How much was the land in dispute worth for rent in each of the years, beginning with the year 1891, down to and including the year of the trial (1898)?  The answer was for various amounts, aggregating $2,972.80.  (3) What is the value of the improvements put on the land for each year since James took possession?  The answer was, $75 for each year, aggregating $600.  Upon this verdict the judge entered a decree, which was in substance as follows:  (1) That upon the payment by E. T. James to the commissioner of the court, named in the decree, of the sum of $1,000 principal, and $576.55 interest, within a specified number of days, the sale of the homestead to James be confirmed. (2) That the commissioner named, or his duly appointed successor, should reinvest the amount paid to Taylor by James under the order and direction of the judge.  (3) In the event James fails or refuses to pay over the sum above named, within the time stated, the plaintiffs recover of the defendant an undivided one-third interest in the lands in his possession, and the sum of $983.64 mesne profits, and that the title to the other two-thirds interest in the property be confirmed in James.  The decree then proceeds to provide for a partition of the land be-

tween the owners of the homestead and James. (4) In the event that James should not permit the partition to be made, then the plaintiffs shall recover the lands described in the petition, without mesne profits, and that writ of possession issue accordingly. (5) That James pay the costs of the case. (6) In the event that paragraph 3 of the decree goes into effect, the mesne profits therein provided for shall be collected by execution and the money paid into court, to be disposed of or reinvested as the court may direct. (7) That no recovery be had against D. W. James, as the plaintiffs during the trial abandoned the right to proceed against him. The defendant made a motion for a new trial, which was overruled. The case is here upon a bill of exceptions sued out by the plaintiffs, as well as upon a bill of exceptions sued out by the defendant. The errors assigned in the bill of exceptions of the plaintiffs are as follows: (1) The court erred in allowing certain amendments to the defendant's answer pending the trial. (2) The court erred in allowing the defendant to amend his answer after the verdict had been rendered and published. The amendment thus allowed in effect set up that the defendant had a prescriptive title to the lands in controversy, and a plea of the statute of limitations against all rents that had been collected prior to four years before the filing of the suit. (3) That the decree rendered was erroneous, and that upon the verdict and pleadings a decree should have been rendered directing that the plaintiffs recover the lands in controversy, together with mesne profits after the value of the improvements as found by the jury had been deducted therefrom, and the cancellation of the deed from Taylor and his wife to James. The errors assigned in the bill of exceptions of the defendant are: (1) The court erred in entering any decree at all in the case, as the questions submitted to the jury were not sufficiently explicit to determine all of the issues in the case. (2) The court erred in not holding that James had a perfect prescriptive title to the lands in controversy. (3) The court erred in refusing to hold that the right of the plaintiffs to recover mesne profits was limited to those accruing within four years prior to the bringing of the suit. (4) The court erred in refusing to enter a decree in

favor of James for the reversionary interest of Taylor to the lands in controversy. (5) The court erred in overruling the defendant's motion for a new trial.

1. One of the grounds of the motion for a new trial filed by the defendant assigns error upon the ruling of the court in permitting James H. Taylor to testify that, after the homestead was set apart, he exchanged the interest in the lots in the 28th district for the undivided half-interest of Robert B. Taylor in lots 2 and 3 and one half of lot 4 in the 6th district, and that after such exchange the interest of Robert B. Taylor thus acquired had been held and treated as a part of the homestead estate. The objection to this testimony was, that title to the undivided interest could not be shown by parol, but must be shown by a deed, and that the homestead in that undivided interest could not be shown by parol. We do not think there was any error in admitting this evidence. While Taylor and his wife had no authority to make the exchange without an order of court authorizing it, yet if they thus secured possession of the property which formerly belonged to Robert B. Taylor and treated it as homestead property, it became impressed with the homestead character. The deed under which James claims describes this property as homestead property, and recites that it was made under an order of court to sell it as homestead property; and hence it does not lie in his mouth to complain of the manner in which this fact is proved. If the fact sought to be proved was established, the exchange would certainly be treated as valid as to him, and the property would be regarded as homestead property. It is settled law of this State, that when personalty set apart under the homestead and exemption laws has been sold and the proceeds of the sale invested in other property of like character, the property in which the reinvestment is made becomes impressed with the exemption, and is not subject to levy and sale, notwithstanding the sale is made by the head of the family or the beneficiaries without any authority derived from an order of court. *Wade* v. *Weslow*, 62 *Ga.* 562; *Johnson* v. *Franklin*, 63 *Ga.* 378; *Dodd* v. *Thompson*, Id. 393; *Kupferman* v. *Buckholts*, 73 *Ga.* 778. While we know of no case where this prin-

ciple has been applied to a sale of land, we see no reason why the same is not applicable to that class of property. It has been held, that, if a homestead is sold under proper order, and the proceeds of the sale invested in other lands to which title is taken in the name of the wife, the property is to be treated as homestead property as against one who deals with the same with knowledge of the facts. *Broome* v. *Davis*, 87 *Ga.* 584. As long as Taylor and his wife and the other beneficiaries of the homestead saw proper to deal with the property acquired from Robert B. Taylor as a part of the homestead, it will, as to all other persons who had knowledge of the facts, be treated as properly a part of that estate.

2. Dealing with the order passed by the judge, authorizing the sale of the homestead, in the light of the allegations in the petition, it can not be otherwise construed than as authority to sell the property only at the price designated in the petition, that is $3,000; and there being nothing in the petition or order indicating that the sale was to be upon credit, or that the land was to be sold in parcels, the order will be construed as authority to sell the property as a whole for $3,000 cash. Any one dealing with Taylor or his wife in regard to the sale of the land would be bound by the terms of the order. Especially would this be true when it appears, as it does in the present case, that the deed under which the defendant claimed title to the homestead estate expressly recited that the sale was made under and in pursuance of the order above referred to.

3. No matter whether we treat James as a direct purchaser from Taylor of the homestead property at the price of $2,000, or as the purchaser of the notes which Taylor had taken from the negroes Teatt and Thomas, the same result is reached, and that is, that James is attempting to set up a contract made with Taylor which is in direct violation of the judge's order, and therefore void. If James bought a portion of the land for $2,000, when the order authorized only the sale of the land as a whole and for $3,000, of course it needs no argument to demonstrate that Taylor violated the order of the court, and that James is seeking to take advantage of this breach of trust, of which he had at least constructive notice. If he is simply the

transferee of the notes of the negroes, he stands in no better position; for the sale to the negroes was void, being on credit when the order authorized a sale for cash only. But even if it be conceded that a credit sale was authorized under the order, Taylor had no authority to sell the notes for less than their face value; and hence if James claims as the transferee of these notes, he claims under an unauthorized transfer of the same by Taylor. There is but one way for a person to acquire title to a homestead estate, and that is, under a conveyance made in direct accord with a proper order passed by the judge of the superior court. No matter how we view the status of James in the present case, no one would for a moment contend that he occupies the position which the above rule would require. Such being the case, his possession of the property is wrongful and unauthorized and he may be ejected therefrom at the suit of the beneficiaries, or even at the suit of the head of the family himself, although a party to the proceedings by which the wrongful act was done. If the plaintiffs had sued at law, it is possible they would have been entitled to recover the premises and also mesne profits without abatement or offset; but as they have elected to proceed against the defendant in a court of equity, they must be required to give effect to all of the rights to which in equity and good conscience the defendant may be entitled, notwithstanding the fact that he is himself a wrongdoer. If the sale had not taken place and the beneficiaries had remained in possession of the homestead property, the annual profits of the estate would have gone to their support; and therefore, if it be shown that any part of the money paid by James to Taylor was used in the purchase of necessaries for the family, the amount so appropriated would be in equity a legitimate set-off against the plaintiffs' claim for mesne profits. If it be shown that any portion of the money was used in the purchase of other real property and such real property was still in possession of the beneficiaries, it would not be equitable to allow them to hold such property and also to recover the homestead property which had been sold. *Timothy* v. *Chambers*, 85 *Ga.* 267 ; *Bazemore* v. *Davis*, 55 *Ga.* 504. The mere fact that there was an attempt to acquire property and a payment made on the

same out of this money would not raise any equity at all in favor of James, notwithstanding part of the money paid by him had been used in making one of the payments under this contract of purchase. If, however, during the time that Taylor and his family were in possession of this property which they attempted to purchase it afforded a home to the beneficiaries, James would be entitled to a deduction from the mesne profits to be recovered, of whatever amount would be a reasonable rental of the home thus furnished to the beneficiaries during the time they occupied the same. In other words, if James's money furnished to the beneficiaries of this homestead that which the income from the homestead would have furnished them had they been in possession of it, then these beneficiaries must not require of him to pay as mesne profits for that which he has already furnished to them with the money which he has paid to Taylor. If while James was in possession he made improvements of a permanent nature upon the homestead estate, which improvements are still subsisting and their presence upon the homestead estate makes the same more valuable, he would be entitled to a deduction from the mesne profits of such an amount as would represent, at the date of the trial, the increased value of the homestead estate brought about by the erection of such permanent improvements. The plaintiffs are entitled to recover the land in any event. They are entitled to recover mesne profits, but these are subject to the set-offs above referred to.

4. When the suit was filed by Mrs. Taylor and her children, James had been in possession of the property under the deed made to him by Taylor and his wife less than seven years, but at the time that Taylor was made a party the term of James's possession exceeded seven years. It is contended by James that he has a good prescriptive title to the land sued for. When a homestead is set apart to the head of a family, he stands in relation to this property as a trustee clothed with the legal title; and it is not only his right but his duty to protect the homestead estate, and to this end bring an action to recover the same from any one wrongfully in possession. The beneficiaries of the homestead, however, have such an interest in the property

that they may bring an action in their own name to recover the same from any one who is in possession holding adversely to them. While it is more regular for the head of the family to bring the suit, an action brought by the beneficiaries in their own name is not void, but an amendment adding the name of the head of the family as a party plaintiff is allowable. *Braswell* v. *McDaniel*, 74 *Ga.* 320; *Eve* v. *Cross*, 76 *Ga.* 693; *Pritchett* v. *Davis*, 101 *Ga.* 236, 242, and cases cited. The cases of *Zellers* v. *Beckman*, 64 *Ga.* 747, and *Shattles* v. *Melton*, 65 *Ga.* 464, in which it was held that the suit must be brought by the head of the family or some good reason shown why this was not done, were dealing with the question as to who was the proper party to bring suit under the act of 1876 (Acts 1876, p. 51), and not with the general homestead law. The suit by Mrs. Taylor and her children was merely defective; and when an amendment was made adding Taylor as a party, this defect was cured, and being cured, the amendment related back to the beginning of the suit, and the same stood as if it had originally been brought in the name of Taylor. Such being the case, the question whether James might have acquired a prescriptive title is not involved in the case, as the original suit was filed within seven years from the date that James went into possession. Especially would this be true in the present case, when the original plaintiffs distinctly allege in their amendment to the petition that at the time of bringing the original suit Taylor refused to sue for the land or to allow the use of his name by them for that purpose, and that the amendment adding him as a party was offered as soon as his consent was obtained. This seems to bring the case even within the rule laid down in the *Zellers* and *Shattles* cases cited above.

5. The amendment to the defendant's answer which set up that the plaintiffs would have no right to recover for mesne profits further back than four years from the date of the filing of the suit was demurred to and the demurrer was overruled. Plaintiffs in their bill of exceptions except to the overruling of the demurrer, but as the decision complained of was made on October 13, 1898, and the bill of exceptions was not tendered and certified until February 6, 1899, it is apparent that the ex-

ception above referred to is too late to be considered by this court. We must therefore treat the amendment as having been properly allowed. The judge in his decree allowed the plaintiffs to recover mesne profits for the entire time that James had been in possession of the property sued for, and in his bill of exceptions he assigns error upon this decision. The question, therefore, as to whether the four years limitation was properly applicable to the plaintiffs' suit for mesne profits is before us for decision. The code declares that all actions for trespass upon or damages to realty shall be brought within four years after the right of action accrues. Civil Code, § 3898. This section has been held to apply to suits for mesne profits which the plaintiff in an ejectment case is allowed to recover against the defendant by way of damages for the wrong done him. *Lopez* v. *Downing,* 46 *Ga.* 120. The beneficiaries of a trust estate are barred by the statute of limitations in every case where the trustee would be barred. Civil Code, § 3773. The right of action is in the trustee, and the mere fact that he fails to enforce his right and that of his beneficiaries within the time prescribed by law would not give them the right to do so after that time has elapsed. In such a case, if they have any right at all, it is to proceed against the trustee himself for the failure to perform his duty. We see no good reason to hold that this principle would not be applicable to the beneficiaries of a homestead estate. Such an estate is in the nature of a trust estate, and the head of the family is the trustee thereof. The legal title to the property is vested in him, and the beneficiaries have only an equitable interest therein. It is true that, under the decisions of this court, this is such an interest as authorizes the bringing of a suit in their own names to recover the homestead property wrongfully sold, and as a necessary incident of such a suit they can recover for mesne profits; but this is all the more reason for holding that the statute of limitations would run against them. If the statute applies to the beneficiaries of an ordinary trust estate, who have no right of action in themselves but are absolutely dependent upon the will of their trustee in this respect, it would seem for a stronger reason to apply to the beneficiaries of a homestead estate, who can bring suit in their own name. The

plaintiffs' right of action in the present case to recover the land was not barred, as we have seen, but the right to recover for mesne profits for a period further back than four years from the time of filing the suit was, and hence the court erred in holding otherwise. See in this connection *Barfield* v. *Jefferson*, 84 *Ga.* 609.

6. The judge committed no error in refusing to decree that title to the reversionary interest in the homestead was in James. While the defendant in his answer prayed for a decree vesting the title to the reversion in him, he was not entitled to such a decree. Even conceding that he acquired title to the reversion under the deed from Taylor and his wife, he can not set up or enforce in any way such title as long as the homestead estate is in existence. It has been held that pending the existence of the homestead estate the reversionary interest of the person entitled to the same is not subject to levy and sale. *Jolly* v. *Lofton*, 61 *Ga.* 154. The case of *Love* v. *Anderson*, 89 *Ga.* 612, seems to rule that a sale of the reversionary interest by the head of the family would not pass the title thereto; and in *Blacker* v. *Dunlop*, 93 *Ga.* 819, it is said that even if a deed made by the head of a family conveying the reversionary interest in the homestead estate passes title, such interest can not be asserted by the vendee during the pendency of the homestead estate.

7. The questions submitted to the jury were not sufficiently full to determine all of the issues made in the case, and the judge should have granted a new trial. Let the case be tried again in the light of what is herein ruled to be the law of the case.

*Judgment on each bill of exceptions reversed. All concurring.*