### 3960.   CENTRAL OF GEORGIA RAILWAY CO. *v.* GARRISON *et al.*

1. A railway company which, with the consent of the municipal authorities, undertakes to alter the condition of existing streets of a city, will be liable to one who is damaged thereby (even though the railway company be employed by the municipal corporation to do the work, and though it may appear that such work is a part of a general plan of municipal improvement), if it appears that the work was undertaken by the railway company with a view of acquiring substantial benefits for itself, and that it had an interest in the proposed improvement, beneficial to itself.

(a) One damaged by a public improvement which is of mutual benefit to the municipality and the railway company is not required to join both these tort-feasors in an action brought to recover his damages. He may sue either or both of them, according to the circumstances of the case.

2. Every owner of property which abuts upon a street has a property right in the street, as an easement for the purpose of access to his premises, and a deprivation of this private right is, prima facie, in the absence of proof of compensation, contrary to law. For this reason the instruction of the trial judge, to the effect that if the jury were satisfied that the plaintiffs' right to the enjoyment of their property was unlawfully invaded by the defendant, and injury resulted, the plaintiffs would be entitled to recover damages, would not warrant the grant of a new trial upon the ground that the evidence failed to show that the defendant had taken any part of the plaintiffs' property.

3. The instruction that any interference with the access to one's property abutting on a street will entitle the owner to compensation is, when viewed by itself, too broad; but when this excerpt is considered in

24

connection with the explicit instruction of the court to the effect that, if the interference with the plaintiffs' right of ingress and egress was caused by a public improvement which was a part of a general plan of the municipality, and in which the defendant company had no interest, the plaintiffs could not recover, the defendant can not complain of it.

4, 5. The instructions complained of as to the manner in which the work was done, and as to the authorization of the mayor and council to do the work, were harmless, even if they were erroneous; because it was admitted that the work was done in a perfectly proper manner and under the express authority of the municipality.

6. An instruction to the effect that if the defendant, without authority, destroyed the plaintiffs' right of access to their premises and otherwise damaged their property as alleged, the jury would not be authorized to set off any increased market value resulting from the improvement, though it may be erroneous, was harmless, because it was explicitly withdrawn by the court upon the statement of the attorneys for the plaintiffs, in open court, that the defendant had authority to do the work in question.

7. The court did not err in repelling the record of what purported to be an application for homestead, inasmuch as the application did not state who were the proposed beneficiaries of the homestead, if any, and there was no effort to show that there were any beneficiaries.

8. Though the recovery obtained in an action for damage to homestead property is for the use of the beneficiaries, if the property injured is in fact a homestead the head of the family can properly maintain the action, and a recovery by him will bar any subsequent action by beneficiaries for the same tort.

9. There was no material error upon the trial, the evidence authorized the verdict, and the amount recovered was not excessive. The judge did not err in overruling the motion for a new trial.

DECIDED FEBRUARY 19, 1913.

Action for damages; from city court of Athens—Judge West. December 11, 1911.

*Harris & Harris, Shackelford & Shackelford, John B. Harris,* for plaintiff in error.

*Cobb & Erwin,* contra.

RUSSELL, J. James D. Garrison, jointly with his wife, brought an action against the Central of Georgia Railway Company. The plaintiffs recovered a verdict. The defendant excepts to the refusal of a new trial. Pending the motion for a new trial Garrison died and his administrator was substituted as one of the parties plaintiff. The action was for damage alleged to have been done to the lot in the city of Athens on which the plaintiffs resided, by reason of the lowering of the grade of the street in front of the house, in consequence of which the premises were made inaccessible. There was conflict in the evidence as to whether the market value

of the premises had in fact been depreciated, but there is sufficient evidence on this subject to authorize the finding of the jury. There is also conflict as to whether the work was done by the railway company solely as a contractor and wholly as a part of a general plan of public improvement on the part of the mayor and council of the city of Athens, or whether, as a matter of fact, the work of the railway company, both upon its terminal property and in Thomas street, was part of a general scheme for the benefit of both the city and the railway, and was done in pursuance of the agreement between the city and the railway company for the benefit of the railway as well as of the city. There was evidence which indicated that the railway company was induced to undergo the expense of grading Thomas street because its terminals abutted on that street, and its traffic could be facilitated, not only generally by the improvement of Thomas street, but specially because of easy access to its terminals from Thomas street.

1. One of the contentions of the railway company is that the cause of action should properly have been instituted against the city, and not against the railway company. It may be that the plaintiffs could have sued the municipality, but they were not compelled to this election. They had the right to sue either the city or the railway company, or both jointly. In support of their contention that the municipality should have been sued, counsel for the plaintiff in error relied upon the ruling in *Atlantic & Birmingham Railway Co.* v. *McKnight,* 125 Ga. 331 (54 S. E. 148). An examination of the decision in that case plainly demonstrates that where it was said, "if the grading of these streets was simply a part of a general plan devised by the city authorities to grade the streets, independent of the use of the same by the railway company, and the railway company was in effect the employee or contractor of the city to do this work, *it may be* (italics ours) that there would be no right of action in the plaintiff against the railway company, but he would be remitted to his action against the city," the court was not stating an authoritative ruling. The entire subsequent discussion of the subject evidences that the court was not ruling that where a railway company, with the consent of the municipal authorities, undertakes to alter the condition of existing streets, for the purpose of benefiting itself (although the change in the grade of the street may be of benefit to the general public),

one injured by reason of such a public improvement is remitted to an action against the municipality alone. It is very apparent, if the ruling in that case is to be taken as conclusive authority upon the point now before us, that the question as to whether the railway company (although it may be considered as a contractor carrying on the work subject to the supervision of the city) acquires substantial benefits by reason of the agreement under which it is carrying on the work is quite important; for, immediately following the sentence quoted above, it is said: "However, if the change in the grade of the streets was for the benefit and convenience of the railway company, and was done by it under the authority of the city to facilitate the construction of its railroad, and not as a part of a general plan of street grading, the plaintiff would have his action against either the city or the railway company," etc. But the judgment in that case was affirmed, the court holding that when the evidence therein is taken as a whole, "it is sufficient to authorize a finding that the change in the grade of the street, although beneficial to the public without reference to the rights of the railway company, also inured to the benefit of the railway company; and it having received this benefit resulting from a change in the grade, it must compensate those whose property was damaged by the grading done for its benefit. The first headnote in that case lays down the rule that where it does not appear that the change in the grade of a street by a railroad company is solely a part of a general plan of the municipality in grading its streets, one whose property is damaged as a result of the change in the grade is entitled to recover damages from the railway company, though the change in grade was made with the consent or under the authority of the municipality, where it appears that the purpose of the railroad in effecting the change was to facilitate the operation of its trains. We think that the benefit which might be derived by the railway company in facilitating its business, by providing means of convenient access to its trains, depot, and other terminals, will stand upon the same footing as a benefit from the greater ease and expedition in the handling of its trains, and consequently that the ruling in the *McKnight* case, supra, disposes also of the 7th and 8th assignments of error, in which complaint is made that the court erred in qualifying a request for instructions, presented by the plaintiff in error, to the effect that the railway

company would not be liable if the grading was simply a part of a general plan devised by the city authorities to grade the streets, independently of the use of the same by the railway, and the railway company was in fact an employee and contractor of the city, by inserting the words "with any interest therein." We think that the court was authorized to direct the consideration of the jury to the interest of the railway company in the proposed improvement in the grade of the street, because there is undisputed evidence which authorizes the inference that the grading was the result of an agreement between the city and the railway company, in which it was contemplated that the work should be beneficial to the railway as well as to the city, and that the work was undertaken by the railway company not upon other considerations, but upon this alone.

2. Complaint is made because it is alleged that the court erred in charging the jury that if they were satisfied, from the evidence, that the plaintiffs were the owners of the property in question, and that their right to its enjoyment was invaded by the defendant unlawfully, and injury resulted, then the plaintiffs would be entitled to recover damages for the injuries sustained. It may be that the word "unlawfully" could well have been omitted, as insisted by the learned counsel for the plaintiff in error, but we can not see wherein the casual use of this word was so prejudicial as to require the grant of a new trial. One of the definitions of "unlawful," given by Mr. Webster, is "illegal," and both Webster and Bouvier in his Law Dictionary define it as "contrary to law." Used in this sense, the jury could well understand the instruction of the court to refer to the fact that an invasion of a private right, without compensation, is contrary to law. The criticism of counsel, that the charge was error because there was no evidence that the defendant had invaded the plaintiffs' property, the work being done in the street, is without point, for every abutting owner has a property right in the street, as an easement, for the purpose of access to his premises. Nor do we think that the complaint that this instruction raised issues which should not have been submitted to the jury, and which tended to mislead and confuse them, is well taken; for later in the charge all the issues were clearly presented.

3. The assignments of error contained in the 2d and 3d grounds

of the amendment to the motion for a new trial are neither of them, in our opinion, meritorious. The statement of the court, that any interference with the access to the premises of an owner of property abutting on a street, which impedes or renders difficult ingress or egress, would entitle the owner to compensation, is too broad. But this dissevered fragment must be considered in connection with the charge as a whole; and as the judge, further on in the charge, explicitly instructed the jury that if the interference with the plaintiffs' right of ingress and egress was caused by a public improvement which was a part of a general plan of the municipality, in which the defendant railway company had no interest, the plaintiffs could not recover, this defense was fully presented. It would be immaterial whether the work was done with or without the consent of the municipal authorities, if the work resulted in a depreciation of the plaintiffs' property, and if the work was done for the benefit of the railway company as well as for the benefit of the city.

4. There is no error in the charge as complained of in the 5th ground of the amendment to the motion for a new trial, upon any of the grounds assigned. It relates simply to the alleged right of the defendant to set off the enhanced market value of the property against the damages claimed by the plaintiffs, in case the jury sustained the defense that the grading of Thomas street by the defendant was done under the direction of the mayor and council of the city of Athens.

5. As to the complaint made in the 6th ground of the amendment to the motion for a new trial, that the instruction of the court, that if the jury were satisfied that the work of grading the street was done with reasonable and proper care and skill, etc., injected a new element, and placed too great a burden upon the defendant, which it would be required to carry before the jury might diminish or extinguish the plaintiffs' claim for damages, it can not be said that this was an error; for it was a fact, uncontradicted in the evidence, that the grading of the street and the construction of the sidewalks was first class in every respect; and, therefore, the instruction could not have been harmful. The same statement applies to the contention that, under the judge's charge, the defendant could not set off the increase of market value against the damages, unless it was shown that the work was done by the

authority and under the direction of the mayor and city council. This was an undisputed fact and was admitted by the plaintiffs, as will appear hereafter.

6. In the 11th ground of the amendment to the motion for a new trial error is assigned because the court charged: "If you find, from the evidence, that the plaintiffs owned the property in question, and you should find that the defendant had no authority to grade down the street and sidewalk, and that such grading destroyed the plaintiffs' right of ingress and egress, and otherwise damaged their property as alleged, you would not be authorized to set off any increased market value to the plaintiffs' property, if you find there was an increased market value to the property of the plaintiffs. That is to say, if the railroad company had no authority from the mayor and council of the city of Athens to do the work, then it does not make any difference how much improvement or how much it enhanced the property, you could not set off that increased value; but if they did have the authority, and there was an enhanced value, then you could set it off." We think this charge was error, because it was not applicable to the pleadings or the evidence. It was undisputed that the work was done with the authority of the mayor and council. But we do not think that this error affected the verdict in any way, and it could not have been prejudicial to the plaintiffs in error, because when the jury had retired, the plaintiffs' counsel stated to the court that they conceded that the defendant did have authority to do the work they had performed; and thereupon, with the consent of the parties, the court recalled the jury and charged them, in this immediate connection (after reading the above excerpt from the charge): "It is conceded by the attorneys for the plaintiffs that the defendant did have authority to do the work they performed; so I withdraw this section of the charge." A trial judge can well confuse a jury by instructions in the general charge which are contradictory, but even in such a case it has been held that the evil can be remedied by an express retraction of the instruction which is erroneous and a reiteration of the correct instruction. Manifestly, where the judge only once refers to a particular phase of the evidence, and thereafter expressly and unequivocally withdraws all he has said upon that phase of the case, the jury can neither be confused nor affected by the language used, but their attention is, by the very circumstances of the case, specially fixed upon the withdrawal.

7. The court did not err in refusing to admit the record showing that the plaintiff, J. D. Garrison, had applied for a homestead in the property described in the petition, which was approved on September 4, 1873, the application not stating who were the beneficiaries of the homestead sought to be obtained. Perhaps if the defendant had stated to the court that it expected to show that there were beneficiaries, and who they were, the record might have been admissible. But this is questionable, since section 3378 of the Civil Code (1910) requires that the application for homestead shall designate the beneficiary, and it is questionable whether the approval of an application which does not name any beneficiary is not void; when considered as a judgment setting aside homestead to one as head of a family, where, so far as it appears from the face of the proceedings, he has no family. But aside from this, the exclusion of the record was not harmful to the defendant and does not require a new trial, for it appears that Garrison's co-plaintiff was his wife, and was, therefore, necessarily one of the beneficiaries of the homestead, and there was no effort to prove that there are any other beneficiaries.

8. The plaintiff in error insists that the recovery by the plaintiffs in the present case would not be a bar to a second recovery by the beneficiaries, and that for this reason the rejection of the record was prejudicial. In our opinion, J. D. Garrison, as the head of the family and the holder of the legal title, has such right to maintain the present action as would preclude any suit on the part of the beneficiaries, though the recovery may be merely a trust fund for the use of the beneficiaries, if the property alleged to have been injured was, in fact, legally set apart as a homestead. We entertain no doubt that, as head of the family, Garrison could maintain the present action, and that a recovery by him would bar any subsequent action on the part of the beneficiaries of the homestead. See *Crowley* v. *Freeman*, 9 *Ga. App.* 1 (70 S. E. 349); *Zellers* v. *Beckman*, 64 *Ga.* 747; *Shattles* v. *Melton*, 65 *Ga.* 464; *Brady* v. *Brady*, 67 *Ga.* 368; *Taylor* v. *James*, 109 *Ga.* 327-336 (34 S. E. 674). Under some circumstances, the beneficiaries of a homestead may sue for an injury done to the homestead estate, but generally the right of action is in the husband, as head of the family and quasi trustee.

9. Upon the assignments of error that the verdict was ex-

cessive, and that it was without evidence to support it, we rule that there is evidence to support the verdict, and also to sustain the amount returned by the jury. As heretofore stated, there was conflict as to whether the value of the premises was enhanced or diminished, and it appears that the jury themselves, by consent of parties, viewed the premises; and, the trial judge having approved the finding, we could not interfere, unless some error had been committed upon the trial which seemingly induced or contributed to the result.

A close examination of the various grounds of the motion for new trial, and the briefs, fails to convince us that any error was committed which would warrant the grant of a new trial. The main insistence of counsel for the plaintiff in error is that the instructions of the trial judge authorized the jury to find against the defendant, even though the jury might be satisfied that the defendant graded the street under the authority of the municipal officers, and according to their direction, as a part of a general plan of street improvement, in case the jury also found that it was a part of a general plan for the improvement of the railway company's property and it actually derived a benefit from the improvement, which concurrently worked injury to the plaintiffs. We agree with the trial judge that this contention is without merit, and hold that if the authority of the city council was obtained and the work was done by the railway company with the purpose and with the effect of conferring a benefit upon the railway company as well as upon the city, and, as a consequence of the improvement of the railway company's facilities, the plaintiffs were injured, they could recover, notwithstanding the work was also in furtherance of the general plan of the municipal authorities to improve the streets, and notwithstanding that it appears without contradiction that the work was actually done as directed by the city, and resulted in an improvement of a public thoroughfare.

*Judgment affirmed.*