4500. Mayor and Council of Americus *v.* Phillips.

Russell, J. 1. A municipal corporation is liable to a property owner for the damage consequent upon altering the grade of the street or sidewalk in front of his premises, whereby his means of ingress and egress are impaired or destroyed or a diminution of the market value of his property results. *Central of Georgia Ry. Co.* v. *Garrison*, 12 *Ga. App.* 369 (77 S. E. 193), and cit.; *City of Atlanta* v. *Green*, 67 *Ga.* 386; *City Council of Augusta* v. *Schrameck*, 96 *Ga.* 426 (23 S. E. 400, 51 Am. St. R. 146); *Roughton* v. *Atlanta*, 113 *Ga.* 948 (39 S. E. 316); *City of Columbus* v. *McDaniel*, 117 *Ga.* 823 (45 S. E. 59); *Mayor &c. of East Rome* v. *Lloyd*, 124 *Ga.* 852 (53 S. E. 103); *City of Rome* v. *Rhodes*, 134 *Ga.* 650 (68 S. E. 330).

2. The fact that the plaintiff had put down a brick sidewalk in front of

21

his property, and had been required to pay for the curbing thereof, was illustrative of the value of the premises prior to the municipal improvement by which he alleged he had been injured, and therefore was properly admitted in evidence. The fact that the grade on which the sidewalk had been put down was fixed by the city engineer was irrelevant; but as the objection went to the evidence as a whole, the court was not required to separate the irrelevant testimony from that which was relevant, in order to exclude the former.

3. There was no demurrer to the petition; and since it was therein alleged that the city, in raising the grade of the street in front of the plaintiff's property, had failed, neglected, and refused to provide suitable and adequate means for the conveyance of the volume of water which flowed through a natural depression of the land at that point, and by reason of this failure water dammed up and ponded into an alleyway adjacent to his lot, whence it flowed into his store, any testimony tending to show that his store was subject to overflows of rainwater, caused by failure to provide adequate means of conveyance for the water, was relevant and material. While the petition may be subject to special demurrer calling for information as to how the water which was dammed up by the elevation of the street and sidewalk flowed into the plaintiff's property, still, in the absence of such a demurrer, it was permissible for him to prove that, owing to the city's act in raising the sidewalk, water overflowed his store, and to prove that the water entered either in front or in the rear or upon the side, or from all these directions.

4. Under the allegations of the petition, evidence that water overflowing from an inadequate man-hole spread over the street and sidewalk, and thence flowed into the plaintiff's store, was admissible.

5. The action being one to recover damages for injuries to the plaintiff's storehouse, and consequent diminution of the market value of the storehouse and the lot whereon it was situated, it was not error for the court, in charging the jury, to refer to the lot as "the property."

6. The defendant pleaded that the grade of the street had been changed with the consent of the plaintiff. In the absence of an appropriate written request, the court was not required to give in charge to the jury the language of section 4490 of the Civil Code, as to consent.

7. Since waiver is a relinquishment of a known right, the court correctly charged the jury that the plaintiff would have to be in possession of all the facts, and know the condition in which the municipal improvement in question would leave his property, before he would be bound by his consent or acquiescence in the proposed municipal improvement so as to waive his right to recover for any damage which might result to him thereby.

8. According to the evidence, the overflows into the plaintiff's store occurred at a time sufficiently antecedent to the action and were of such character as to raise the inference and authorize the presumption that the municipality knew of the defects in the sewer, to which the injury of the plaintiff's property was traceable.

9. The verdict is supported by evidence which would have authorized a

larger finding in behalf of the plaintiff than that returned by the jury, and the contention that it is excessive is without merit.

*Judgment affirmed.*

DECIDED AUGUST 16, 1913.

Action for damages; from city court of Americus—W. P. Wallis, judge pro hac vice.   September 24, 1912.

Phillips sued the mayor and council of the City of Americus for $1,500 damages.   In his petition he alleged, that in 1909 the defendant changed the grade of the street in front of his lot, thereby raising the surface of the street several feet above the lot, which before the change of grade was higher than the street; that at that time there were on the lot a dwelling-house and a storehouse, which storehouse had been erected with reference to the elevation of the street and sidewalk, in accordance with instructions of the city engineer of the defendant, application having been made to the mayor and council for a permit for the erection of the building; and that by reason of the change of grade the approach to his premises was obstructed; that until the grade was changed, water from rains, which flowed down a natural depression of the land from neighboring lots of the same block into an alley at the side of his lot, passed through the alley into the street, where it was carried off by sewers, but when the grade was changed the defendant failed and refused to provide suitable and adequate means of carrying off the water, and consequently, whenever it rained, the water dammed up in the alley and spread over his lot and flowed into his store and under his dwelling-house, damaging his goods and rendering his property undesirable and less valuable for business or habitation, and constituting a nuisance; that filth from neighboring stables and the county chain-gang stockade was thus carried to his lot and added greatly to the nuisance and damage; that there is no way to remedy the evil effectively, except by raising his premises to the level of the sidewalk and providing a method for carrying off the water from the alley, and to do this would cost at least $1,500; and that his property is worth at least $1,500 less than it was before the grade of the street was changed. Presentation and refusal of his claim for damages were alleged.   The defendant in its answer contended that the change in the grade of the street had resulted in enhancement of the value of the plaintiff's property, and further contended that he consented to the

change of grade and waived the right to claim damages on account of it.

The trial resulted in a verdict for $750 against the defendant; its motion for a new trial was overruled, and the movant excepted. In addition to the grounds that the verdict was contrary to law and to the evidence, and excessive, the motion for a new trial contained the following grounds:

1. The court erred in allowing the plaintiff to testify that he put down a brick sidewalk in front of the property in question, and the city put down curbing there, and that the city engineer gave him the grade by which he was to put down his sidewalk. This testimony was admitted over the objection that it was irrelevant, immaterial, and prejudicial. A note by the court states that "the plaintiff stated, in offering this evidence, that it was offered for the purpose of illustrating values; also the question of good faith of plaintiff."

2. The court erred in allowing the following evidence of the plaintiff to remain before the jury: "That water comes into that property from the back side, a little from the front, but mostly from the back. It comes in underneath there and comes around broadside from the court-house. It comes in otherwise. A heap of it goes from the alleyway and out in front of my store door. It don't go through the store door to get there. It backs up from the sidewalk and floods the back of the lot and the back side. It gets under the hotel property that way." The objection made to this evidence, by motion to rule it out, was that there was no allegation of negligence "except in the construction of the sewer and water coming down the alleyway east of the storehouse."

3. The court erred in allowing to remain before the jury testimony of J. W. Cobb that he noticed water coming in the plaintiff's store from the front door, the side door, and the back door, "on the far side." This testimony was objected to on the ground that there was no allegation that the water came from the source to which the witness referred.

4. The court erred in allowing the witness Shiver to testify as follows: "There is a curbing on the outside of that sidewalk, which is about 18 inches higher, about the same as the sidewalk. There is a drain made there to take care of the water, a man-hole; and they have some little sewers that fill up and wash over every

time it rains. I haven't made any such statement as that the water from the street turns into his store, but I do say that it overflows the sidewalk and runs in there because there is no sewerage sufficient to take care of it." This testimony was objected to on the ground that there were no pleadings to authorize the introduction of testimony as to whether water ran into the store from over the sidewalk.

5. The court erred in charging the jury as follows: "He alleges that on this property is a two-story frame dwelling-house, and that after he bought it he built a brick storehouse. He claims that this property at that time was above the street grade—at the time he bought the property and built the house." It is alleged that this was error because "there is no evidence to authorize this charge, and said charge uses the word 'property' and does not state whether it means building and lot, or building and lot separately; movant contending that the evidence shows that the lot was lower than the street before the grading was done."

6. The court erred in not giving in charge to the jury the following section of the code (Code of 1910, § 4490): "As a general rule there can be no tort committed to a person consenting thereto, if that consent be free and not obtained by a fraud, and be the action of a sound mind. The consent of a person incapable to consent, as a minor, and in some cases a married woman, can not affect the rights of the husband, parent, or guardian."

7. The court erred in charging as follows: "I charge you that it is not necessary to have that consent in writing, but an oral consent would bind the plaintiff, if you believe from the evidence in this case that he consented that the city should make these improvements, and waived the question of damages; but I charge you at the same time that he would have to be in possession of all the facts, know the condition in which it would leave his property, before he would be bound by that consent or acquiescence. If you believe, from the evidence in the case, that he knew that the city went in pursuance of that and graded the street, then I charge you that he could not recover, and you would return a verdict in favor of the defendant." It is contended that this is "an incorrect statement of the law, in that the court qualified the consent relied upon by the defendant, the contention of the defendant being that it was an omnibus waiver; and the attendant limitations that he

would have to know in what condition it would leave his property, and be in possession of all facts, limited said charge to such an extent that the same was prejudicial to defendant's plea, and not a correct statement on the subject of an omnibus waiver or consent to a tort."

*Hollis Fort,* for plaintiff in error.
*L. J. Blalock, J. A. Hixon,* contra.