## CITY COUNCIL OF AUGUSTA *et al.* v. SANDERS.

ATKINSON, J.  1. The act approved December 17, 1896 (Acts 1896, p. 119), amending the charter of the City of Augusta, confers express authority to require by ordinance payment of a "license tax upon any occupation, trade, or business followed or carried on within the corporate limits of the city," except such as are "taxed exclusively by the State," whether or not the person carrying on the business "resides within said city limits." But neither the provisions of the general welfare clause as contained in section 3 of the original charter of the city, assented to January 31, 1798 (Marbury & Crawford's [1802] Digest of the Laws of Georgia, 136), nor the conference of powers as expressed in sections 1 and 4 of the amendatory act approved August 15, 1922 (Acts 1922, p. 537), expressly or by necessary implication confer authority to refuse to grant a license to pursue a useful and per se perfectly lawful occupation such as the keeping of a meat market and grocery business, or, having granted such a license, to arbitrarily revoke it.

Injunctions, 32 C. J. p. 240, n. 51; p. 259, n. 9.

Licenses, 37 C. J. p. 187, n. 5; p. 238, n. 42; p. 240, n. 76; p. 247, n. 87, 88, 90, 91, 4; p. 248, n. 7; p. 262, n. 95.

Municipal Corporations, 28 Cyc. p. 745, n. 22; p. 748, n. 43.

2. As to a useful and per se perfectly lawful occupation, such as the keeping of a meat market and grocery business, the City of Augusta has no authority to arbitrarily revoke a business license which for the purpose of raising revenues it has granted to the proprietor thereof, nor has it authority to revoke such license by ex parte action upon the part of the officers of the city or the mayor and city council, on account of the manner in which the business is conducted. If, after a futile attempt to revoke a license of the character above mentioned, the city attempts to prevent the proprietor from carrying on the business for which the license was issued, by continuously arresting him and prosecuting him for conducting the business without a license, equity will afford the proprietor a remedy by injunction. *Peginis v. Atlanta*, 132 *Ga.* 302 (63 S. E. 857, 35 L. R. A. (N. S.) 716); *Brown v. Thomasville*, 156 *Ga.* 260 (118 S. E. 854).

3. As the mayor and city council would have no charter authority to refuse a license of the character above mentioned, or, having issued a license, to revoke it, that body could not create such authority to revoke by provisions in the ordinance under which the license was issued, or in a pre-existing ordinance purporting to reserve the right to the city to revoke such license.

(a) A license of the character above mentioned is not revoked by the mere act of a policeman, under direction of the mayor, in demanding and taking physical possession of the license certificate, and the subsequent ratification of such act by formal resolution of the city council.

4. Under application of the foregoing principles, the judge did not err in overruling the general demurrer to the petition, or in granting a temporary injunction preventing interference with the plaintiff in carrying on the business of conducting a meat market and grocery business under the license granted to him.

5. The mayor and city council did not attempt to abate the business as a nuisance, under the Civil Code (1910), § 5331, relating to abatement of nuisances generally in cities having a population of twenty thousand or more; or the place as a nuisance under the act approved December 19, 1899 (Acts 1899, p. 73, Civil Code (1910), § 5335), relating to abatement of "blind tiger" nuisances.

*Judgment affirmed. All the Justices concur.*

No. 5626. MAY 3, 1927.

Injunction, etc. Before Judge Franklin. Richmond superior court. August 19, 1926.

On February 2, 1926, J. M. Sanders paid $55.00 and received from the City Council of Augusta a license to conduct a meat market and grocery business at 1748 Broad Street in that city until December 31, 1926. Sanders conducted the business until June 10, at which time a city detective, acting under instructions of the mayor, removed and carried away the license. The detective warned Sanders not to again open up the store. A case was docketed against him the following day, and on June 12, in the

recorder's court, Sanders was convicted of doing business without a license. On June 15, Sanders filed a petition alleging all that is stated above, and substantially as follows: The mayor, in causing the removal of petitioner's license, acted without any lawful warrant or authority, and without any notice, and without any opportunity afforded petitioner to contest the same, and over his protest. He was warned by the municipal authorities that each time he opened his store for the purpose of doing business a new and additional case would be docketed against him for violating section 10 of the business-license ordinance approved Dec. 16, 1925, which provides: "All licenses herein required shall be paid in advance. After January 15th of each year, any person who as owner or agent for the owner shall conduct any business whatever in this city, without paying the required license therefor, shall be punished for each day of such failure by a fine of not less than five nor more than twenty dollars, or serve on the public works not less than ten nor more than twenty days (or by imprisonment), at the discretion of the recorder's court, to which all such persons shall be reported." Petitioner has invested a considerable amount of money in the business, and irreparable damage will be done by continuing to prevent him from conducting it, by prosecutions or otherwise. He is without adequate remedy at law; and unless the municipal authorities are restrained from harassing him by docketing cases in the recorder's court for conducting business without a license, his business will be completely destroyed, and he will have been deprived of his rights under said license without due process of law, in that the license was attempted to be revoked without affording him an opportunity to be heard. The prayer was that the City Council of Augusta, its officers, agents, and employees be restrained from arresting petitioner and docketing cases against him on account of his alleged doing business without a license.

The defendants filed a demurrer alleging: (a) there is no equity in the petition; (b) plaintiff sets forth no cause of action, either legal or equitable, against defendants, or any of them; (c) the allegations taken as a whole show that defendants, and all of them, were in the exercise of legal functions duly delegated to them in the matters complained of; (d) the allegations taken as a whole show that the city council, acting through its mayor

as chief executive and its police officers, was in the exercise of its executive power, and this court has no jurisdiction to review such acts of a governmental agency; (e) the allegations show that the city council, acting through its mayor as chief executive, is a governmental agency, and the power to revoke the license was duly delegated to the mayor, and the city council acting through its mayor was in the exercise of its right as such governmental agency in revoking the license, and such action is not subject to review by this court, because the act was the exercise of the executive power granted to the city council. The defendants filed also an answer admitting issuance of the license; that plaintiff was warned not to again open the store for the purpose of doing business; that they threatened to continue to docket cases against petitioner in the recorder's court for conducting business without a license; that section 10 of the ordinance of 1925 is properly quoted, but is not the only portion of such ordinance pertinent to the case. Other allegations were denied, and further answering defendants say: While it is true plaintiff procured a license to operate a meat market and grocery store, defendants aver that the procuring of the license was a scheme of plaintiff to conduct an illegal place of business where whisky and other intoxicants are kept for the purpose of illegal sale; the procuring the license was merely a shield employed to facilitate petitioner in conducting an illegal business. Petitioner pleaded guilty, July 12, 1921, in the city court of Richmond County, to a violation of the prohibition act, and on May 31, 1924, five and a half gallons of whisky were found at his place of business. On February 5, 1926, plaintiff's place of business was searched, and fifty gallons of whisky were found. On June 5, 1926, eighty-five gallons of whisky were found at his store in the morning, and thirty-five gallons in the afternoon. On June 7, 1926, his place of business was again searched, and thirty-three gallons of whisky were found. On June 10, 1926, the mayor, acting upon information received from the police authorities and under powers duly delegated to him by the city council and as chief executive of the city, directed the police authorities to take up the license, and did revoke it for good order, peace, and dignity of the city. Plaintiff obtained the license to sell meat and conduct a grocery store with full knowledge of the contents of Augusta City Code (1909), § 524, which provides, among other things:

"All licenses and privileges for which a special tax has been paid are non-transferable, except where otherwise provided in this Code, and by consent of the mayor as to all others, and may be reconditioned or revoked by council whenever in the judgment of council the public good may so require." The license ordinance approved December 16, 1925, contains the following: "This license is granted upon the conditions, among others, that the licensee shall permit any member of the police force of the City of Augusta to inspect the place of business of the licensee operated hereunder at all times without a search warrant. This license is not transferable nor proratable, and shall be forfeited upon the conviction of the licensee of the violation of any law." On June 23, 1926, the city council met for the first time since the first Monday in June, and adopted a resolution ratifying the action of the mayor in forfeiting the license as its own act. On June 10, in accordance with the lawful order of the mayor, a city detective went to the premises of petitioner and informed him he had been directed to take up the license, and, without any protest on the part of petitioner, took the license as he was instructed. Petitioner was arraigned before the recorder and fined ten dollars; and since June 12, petitioner under the protection of this court has continued in open violation of the law, tending in every way to corrupt the morals of the community, and contrary to the public good. There is no equity in the petition; plaintiff does not come into equity with clean hands, and no equitable relief should be granted him.

The bill of exceptions contains the following: "The plaintiff admits the allegations in defendant's answer in reference to his having been charged and convicted of violating the prohibition law, but he does not admit the conclusions drawn in the answer from these facts. He admits that he pleaded guilty to five separate violations of the prohibition law in the city court of Richmond County on June 29th, 1926." On the trial evidence was introduced by plaintiff tending to support the allegations of his petition. The defendants introduced evidence showing that complaints had been made to the police in reference to plaintiff's place of business, that raids had been made and liquor found in a vacant store next to that of plaintiff; that two such raids were made on June 5, 1926, one in the morning and one in the afternoon. The court rendered judgment stating that the evidence

abundantly shows plaintiff had kept whisky in his place of business, and had on two or three occasions at short intervals been raided and found in possession of liquor; that "the law of this State is that an ordinary business license, legitimate within itself, may not be revoked arbitrarily and without giving to the owner of said license an opportunity to be heard, even though under the guise and pretext of doing a legitimate business the main business of the holder of the license was illegitimate. . . The evidence shows that [plaintiff] . . had and kept on hand quantities of. liquor, and thereby created a nuisance. It is therefore considered, ordered, and adjudged that the defendants in said case, each and every one of them, be and they are hereby enjoined as prayed for in plaintiff's petition. . . That the plaintiff . . be . . enjoined from maintaining a nuisance . . by having, keeping, selling, or otherwise possessing or dealing in any intoxicating liquors or beverages of any kind, quality, or quantity whatsoever; . . that the demurrer filed by the defendants to the plaintiff's petition be and the same is hereby overruled." The defendants excepted to this judgment as contrary to law and to the admitted facts in evidence.

The general welfare clause in the charter of the City of Augusta, referred to in the first headnote, is as follows: "They shall also be vested with full power and authority, from time to time, under their common seal, to make and establish such by-laws, rules, and ordinances respecting the harbor, streets, public buildings, workhouses, markets, wharfs, public houses, carriages, wagons, carts, drays, pumps, buckets, fire-engines, the care of the poor, the regulation of disorderly people, negroes, and in general every other by-law or regulation that shall appear to them requisite and necessary for the security, welfare, and convenience of the said city, or for preserving peace, order, and good government within the same." The act approved August 15, 1922 (Acts 1922, p. 537), amending the charter of the City of Augusta, provides: Section 1: "All corporate rights, powers, and privileges conferred, and all duties, obligations, and liabilities imposed by law, shall be preserved unto said city, except as altered or amended by this act." Section 4. Power "to compel the abatement and removal of all nuisances within the city, . . to regulate and prevent slaughter-houses or other noisome or offensive businesses within the city, the keeping of

animals, poultry, or other fowls therein, or the exercise of any dangerous or unwholesome business, trade, or employment therein; . . and generally to define, prohibit, abate, suppress, and prevent all things detrimental to the health, morals, comfort, safety, convenience, and welfare of the inhabitants of the city; . . to provide for the general preservation of the health of the inhabitants of said city; make regulations to secure the same; inspect all food and foodstuffs and prevent the introduction and sale in said city of any article or thing intended for human consumption which is adulterated, impure, or otherwise dangerous to health; and to condemn, seize, and destroy, or otherwise dispose of any such article or thing; . . to have all powers, duties, rights, and privileges heretofore granted to the Mayor of the City of Augusta, to the City Council of Augusta, or to the Mayor and City Council of Augusta by the constitution of the State of Georgia, or by any act of the legislature of the State of Georgia, either by general or special law, and not inconsistent with the provisions of this act; . . to do all things whatsoever necessary or expedient to be done or performed for the comfort, safety, convenience, benefit, health, and advantage of said city and the citizens thereof."

*Archibald Blackshear,* for plaintiffs in error.

*Peebles & Bowden,* contra.

GILBERT, J., specially concurring. When Sanders obtained his license from the City of Augusta there was in operation an ordinance, set out in the statement of facts, which provided that the license could be revoked "upon the conviction of the licensee for a violation of any law." Sanders on the trial admitted that he had repeatedly violated and was convicted of violating a State penal law. "One who accepts and acts under a license on the condition that it may be revoked at discretion, whether such condition is imposed by statute, ordinance, or the license itself, thereby assents to such condition, and is estopped to question the right to revoke, and such estoppel applies, even though no notice of an intention to revoke is given him." 37 C. J. 247. Section 15 of the Political Code provides as follows: "Where, in the exercise of the police power, a license is issued, the same is not a contract, but only a permission to enjoy the privilege for the time specified, on the terms stated. It may be abrogated." This section has reference expressly to licenses issued in the exercise of police

16

power. As is ruled above, a city has no authority to arbitrarily revoke a business license it has granted to a person to carry on a business per se perfectly lawful. Such a license may be revoked upon just or reasonable cause, where the action taken is not arbitrary. In cases falling peculiarly within the police power, such as the operation of barrooms and pool rooms, the license may be revoked, in proper instances, without notice. In cases where the business does not fall within the police power, the rule is otherwise. *Purvis* v. *City of Ocilla*, 149 *Ga.* 771 (4) (102 S. E. 241). Meat markets, in a sense, would seem to be within that class falling within the police power; but for present purposes I treat them as classified with grocery stores. I concur in the judgment of affirmance solely on the ground that the license was revoked by the mayor and the council without due notice, thus depriving the licensee of his constitutional right of due process. I am aware that notice would have been of little, if any, protection or value, since the licensee admitted flagrant violation of the criminal law of the State, which undoubtedly afforded just cause for the revocation of his license, and also showed that the action of revocation was not arbitrary. Mr. Justice Hines joins in this special concurrence.