## 35673. CITY OF THOMSON *v.* DAVIS.

DECIDED MAY 31, 1955—REHEARING DENIED JUNE 15, 1955.

*Peebles & Burnside,* for plaintiff in error.

*Randall Evans, Jr.,* contra.

Townsend, J. ■ Certain special demurrers which were held by the trial court not to apply to count 1 of the petition, but which were applied to the remaining count, are immaterial to this decision, the sole question being whether or not either or both of the counts set forth a cause of action for a money recovery. For this reason also it is immaterial that some of the special demurrers took inconsistent positions with each other, which, however, in any event is not improper pleading.

The charter of Thomson (Ga. L. 1927, p. 1631 et seq.) provides, in sec. 62, that the mayor and council shall have power to require persons desiring to build to first obtain a permit, and to refuse to allow buildings to be erected which will endanger the safety or health of the citizens, or which are likely to become a nuisance, and to provide for removal of buildings erected in violation of this section. Section 57 provides that the mayor and council shall have authority to grant licenses to all persons opening up, keeping, or maintaining any kind of business within the city, to provide for the amount and payment of licenses and for the revocation of any and all licenses issued under this section. Since the petition alleges that the city originally granted the plaintiff a permit "for erecting, equipping and operating," and that he did "erect and equip," and the defendant thereafter "withdrew permission for plaintiff to *operate,*" the only construction open to this court (which may take judicial notice of charter provisions, but not of ordinances) is that the plaintiff procured from the defendant both a permit to erect and a license to operate the slaughterhouse, which may or may not have been in the same instrument, but in any event the right to operate was granted and then unlawfully withdrawn. Accordingly, from the allegations of the petition it appears that the defendant in doing the acts complained of here was engaged in the exercise of its police power, although in an improper manner, which

power is one of its governmental functions. *Duke* v. *Mayor &c. of Rome,* 20 *Ga.* 635; *Cutsinger* v. *City of Atlanta,* 142 *Ga.* 555 (83 S. E. 263, L. R. A. 1915B 1097, Ann. Cas. 1916C 280).

■ This action is not predicated on a contract or a tort, but seeks recovery on the theory that the act of the governing authorities of the city constituted a damaging of the property of the plaintiff without first making adequate compensation under the constitutional provision hereinabove cited, and a deprivation of the property of the plaintiff without due process of law under the Federal and State constitutional provisions pointed out.

A license granted by a city to engage in a business within its boundaries is not a contract. Code § 20-117 distinguishes licenses from contracts as follows: "Where, in the exercise of the police power, a license is issued, the same is not a contract, but only a permission to enjoy the privilege for the time specified on the terms stated. It may be abrogated." This Code section was based on two Supreme Court decisions involving liquor licenses, which, as pointed out in *Ison* v. *Mayor &c. of Griffin,* 98 *Ga.* 623 (25 S. E. 611), is a mere permit to do that which would otherwise be an offense against the general law. There is no general law making slaughterhouses illegal; and if no city ordinance exists covering the licensing of slaughterhouses and rendering their operation without a license within the corporate limits illegal, the plaintiff of course would be under no necessity whatever for obtaining a license. *Shaver* v. *Martin,* 166 *Ga.* 424 (143 S. E. 402); *Gray* v. *Griffen,* 111 *Ga.* 361 (36 S. E. 792, 576 L. R. A. 131). Assuming for the sake of this decision that the defendant, as authorized by its charter, did enact a pertinent ordinance covering the subject matter, a violation of which would subject the plaintiff to penalty, and that such ordinance was reasonable and valid as coming within the police powers of the municipality (the licensing of slaughterhouses having been stated in *Cutsinger* v. *City of Atlanta,* supra, to come within the police powers of the municipal corporation), then this Code section applies with equal force to the plaintiff here. According to the allegations of the petition, the governing authorities of the City of Thomson proceeded in an ex parte manner to revoke such license previously granted to operate the abattoir, which ex parte action was unauthorized and in

violation of law. Nevertheless, it cannot form the basis for an action on a contract, such license not constituting one.

■ As to actions arising independently of a contractual relationship, a municipality is never liable in tort for its negligent performance of a purely governmental function, however illegally the authority may be exercised. Code §§ 69-301, 69-307; *Moss* v. *City Council of Augusta,* 93 *Ga.* 797 (20 S. E. 653); *Davis* v. *City of Rome,* 23 *Ga. App.* 188 (3) (98 S. E. 231); *Brown* v. *City of Union Point,* 52 *Ga. App.* 212 (183 S. E. 78). It may, however, be liable in connection with the execution of a governmental function if the act constitutes a nuisance or if it amounts to the taking or damaging of private property for public use without just and adequate compensation first having been paid. *City of Atlanta* v. *Minder,* 83 *Ga. App.* 295 (63 S. E. 2d 420); *Holmes* v. *City of Atlanta,* 113 *Ga.* 961 (39 S. E. 458); *Central of Ga. Ry. Co.* v. *Garrison,* 12 *Ga. App.* 369 (77 S. E. 193); *City of Atlanta* v. *Gore,* 47 *Ga. App.* 70 (169 S. E. 776).

Since the allegations of this petition show no nuisance on the part of the defendant, it is necessary, in order to determine whether or not the petition states a cause of action against it, to turn to the other theory under which a city may become liable for the action of its officers and agents in connection with the performance of governmental functions, that is, the taking or damaging of private property for public purposes without adequate compensation having been first paid. The liability of municipalities in this respect is the same as that of the State or any arm of the government thereof, and has its origin in the common-law principle that governments cannot be sued without their consent. An examination of the cases holding liability for a violation of this provision of the Constitution of this State shows without exception that the taking is to use the property taken by the governing authority for public purposes, or damaging other property not so taken in the same connection. *Kitchens* v. *Jefferson County,* 85 *Ga. App.* 902 (70 S. E. 2d 527); *Kea* v. *City of Dublin,* 145 *Ga.* 511 (89 S. E. 484). The acts of the governing authorities of the city here complained of constituted neither a taking nor a damaging for public purposes, but were an unlawful attempt on the part of the governing authorities to regulate the use of the property of the owner for his own purposes.

This is the construction given by a majority of the courts of this country to similar constitutional provisions. In 11 Am. Jur. 1005, § 266, it is stated: "Acts done in the proper exercise of the police power, which merely impair the use of property, do not constitute a taking within the meaning of the constitutional requirement as to the making of compensation for the taking of property for public use, and accordingly do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action for the injuries sustained." See also Samuels v. McCurdy, 267 U. S. 188 (45 Sup. Ct. 264, 69 L. ed. 578, 37 A.L.R. 1378); Eberle v. People of Michigan, 232 U. S. 700 (34 Sup. Ct. 464, 58 L. ed 803); Mugler v. Kansas, 123 U. S. 623 (8 Sup. Ct. 273, 31 L. ed. 205); City of Youngstown v. Kahn Bros. Bldg. Co., 112 Ohio St. 654 (148 N. E. 842, 43 A. L. R. 662): In 29 C. J. S. 792, § 10, it is stated that requiring a license for engaging in a particular activity is justifiable under the police power, or as raising revenue, and is not a taking of private property without compensation unless it amounts to confiscation, and that "the revocation of a license is not a taking of property without compensation."

If, however, the restriction on the use of property does not have its basis in the public good and bears no substantial relation to the public health, safety, moral or general welfare of the municipality, then it cannot be justified under the police power, and in a proper proceeding, such as injunction or mandamus, might be set aside as arbitrary and capricious, and as an unlawful attempt to interfere with the citizen's right in property. Also, if the restriction is so all-embracing as to completely destroy the beneficial interest of the owner in his property, it amounts to a confiscation, and the law or ordinance may, in a proper proceeding, be declared to be unenforceable as coming under the constitutional inhibition relating to the taking or damaging of property without just and adequate compensation. *Jones* v. *City of Atlanta*, 51 *Ga. App.* 218, 225 (179 S. E. 922); Tews v. Woolhiser, 352 Ill. 212 (185 N. E. 822); Carter v. City of Bluefield, 132 W. Va. 881 (54 S. E. 2d 747); Annotations, 136 A. L. R. 1388. But where no law or ordinance is under attack, and where the subject matter is such as to come under the valid

exercise of police power (as slaughterhouses were declared to be in the *Cutsinger* case, supra), no case is made which would entitle the plaintiff to compensation for a "taking for public purposes."

In *Rhines* v. *Commissioners of Chatham County*, 50 *Ga. App.* 844 (1) (179 S. E. 140), it was held: "It is only where property has been appropriated or damaged by the erection and maintenance of a public improvement that the owner can recover upon the theory that his property has been appropriated or damaged for public purposes." *City of Atlanta* v. *Kenny*, 83 *Ga. App.* 823 (64 S. E. 2d 912), cited by the defendant in error on the theory that the building injured by the negligence of municipal authorities in laying ditches for a fire-station signal system was not appropriated to the use of the city, is not authority for this case, since it falls under the rule in the *Rhines* case as being property "damaged by the erection . . . of a public improvement." In the present case, title to the property and its possession, physically unimpaired, remain in the owner and only the use is sought to be restricted. This does not establish a cause of action against the city for money damages.

The contention in the remaining count that the defendant became liable because its action deprived the plaintiff of his property without due process of law is not well taken. Being ex parte, the revocation of the license was void, and he did not need to pay any attention to it unless his continued operation of the business would subject him to penal action on the part of the city, in which case he would have his remedy by injunction to keep the defendant from interfering with his proper use of the property. *Carey* v. *City of Atlanta*, 143 *Ga.* 192 (2) (84 S. E. 456, L. R. A. 1915D 684, Ann. Cas. 1916E 1151); *Cutsinger* v. *City of Atlanta*, supra; *New Mission Baptist Church* v. *City of Atlanta*, 200 *Ga.* 518 (37 S. E. 2d 377); *City Council of Augusta* v. *Sanders*, 164 *Ga.* 235 (138 S. E. 234). Obviously the plaintiff has not been deprived of his property, although the action was without due process of law. He still has his property and he has the right to operate. If that right is attempted to be infringed upon, then he has his remedy to protect that right.

Code § 88-401, giving the right to municipalities to interfere with or destroy private property for the public good in emergencies, such as conflagration or disease, and giving the owner the

right to the value of the property taken, is not pertinent to this situation, as the act was not done under the emergency powers of the defendant. In *Pruden* v. *Love,* 67 *Ga.* 190, damages were not sought from the municipal corporation, but from the officers doing the illegal act in their individual capacity. The principles of estoppel discussed in *City of Atlanta* v. *Gate City Gas Light Co.,* 71 *Ga.* 106, and *City of Summerville* v. *Ga. Power Co.,* 205 *Ga.* 843 (2) (55 S. E. 2d 540), and cited by the plaintiff, are not applicable to this petition, since estoppel merely precludes from setting up a defense, but creates no new right of action in the opposite party. *Rieves* v. *Smith,* 184 *Ga.* 657 (192 S. E. 372, 112 A. L. R. 368). As pointed out above, *New Mission Baptist Church* v. *City of Atlanta,* supra, was a case in which the remedy sought was not damages but injunction, an available remedy, and either injunction or mandamus was also sought in the following cases cited by the plaintiff, none of which sought money damages: *Powell* v. *Garmany,* 208 *Ga.* 550 (67 S. E. 2d 781) ; *City Council of Augusta* v. *Sanders,* supra; *Warren Co.* v. *Dickson,* 185 *Ga.* 481 (195 S. E. 568). The case of *Langley* v. *City Council of Augusta,* 118 *Ga.* 590 (45 S. E. 486, 98 Am. St. R. 133), is not authority that damages may be recovered in this case, since that case dealt with negligence in the laying of drains and sewers, a ministerial function.

Two cases remain to be mentioned. In *Gould & Co.* v. *City of Atlanta,* 60 *Ga.* 164, recovery was allowed for a wilful and malicious act of the city which damaged the plaintiff's business; and in *City of Atlanta* v. *Dooly,* 74 *Ga.* 702, recovery was allowed where the city removed the plaintiff's billboard from his premises in a wrongful manner. In neither of those cases was the constitutional provision regarding taking of private property for public purposes without compensation adverted to, and in both the city was treated as though it were a private tortfeasor without regard to the fact that it was engaged in a governmental function. Accordingly, those decisions appear to be in direct conflict with Code § 69-301 and the line of decisions thereunder, and they are in no event authority for the proposition that the revocation of the license complained of here constituted a taking by the municipal authorities.

The trial court erred in overruling the demurrers to the petition.
*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*