35778. DAVIS *v.* JOHNSON.

DECIDED NOVEMBER 1, 1955.

860

*Randall Evans, Jr.,* for plaintiff in error.

*Fulcher, Fulcher & Hagler,* contra.

GARDNER, P. J. 1. As we construe the petition, the sole basis for establishing liability and damages in favor of the plaintiff against the defendant is the allegation that the defendant *notified* the plaintiff that the permit issued to the plaintiff was void

and that the plaintiff could not operate the abattoir but that the defendant would prevent and keep the plaintiff from operating the abattoir and that the defendant had consistently allowed the actions to stand. In this connection it is appropriate to consider the case of *City of Thomson* v. *Davis*, ante, p. 216 (88 S. E. 2d 300), in which it was decided that the general demurrer of the City of Thomson should have been sustained to a petition of the plaintiff in the instant case, which case alleged substantially the same facts as the petition in the instant case and which arose by reason of the identical events. We will have occasion to further refer to that decision. The present action is brought under the provisions of Code § 69-208, which read: "Members of the council and other officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers, if done oppressively, maliciously, corruptly, or without authority of law."

The act of the General Assembly approved August 19, 1927 (Ga. L. 1927, pp. 1631 et seq.), created a new charter for the City of Thomson. This court takes judicial cognizance of this act. Section 13 of the charter provides: "That the mayor . . . shall not vote on legislative questions and matters before the body, except in case of a tie."

Construing the petition most strongly against the pleader, as must be done on demurrer, it will be presumed by this court that there was no tie in any action taken by the City Council of Thomson whereby the defendant, as mayor, was authorized to, or actually did, vote upon any question respecting the issuance or the revocation of the plaintiff's permit, or the operation of his abattoir. It appears there was no contract between the City of Thomson and the plaintiff (see *City of Thomson* v. *Davis*, supra) ; consequently, there can be none between the plaintiff in the instant case and the defendant. The action for damages in the instant case for the alleged taking and damaging of the property of the defendant is predicated solely on Code § 69-208. The provisions of that section as to oppressive, malicious, corrupt, and unlawful acts cannot be applied to the acts of the defendant in the instant case, for it nowhere appears in the allegations of the petition that the defendant by force, threats, or any means what-

soever prevented the plaintiff from conducting his business or exercising the privilege and license. Indeed, it is not alleged that the defendant canceled or revoked the permit. It is only alleged that the defendant *notified* the plaintiff to the effect that his permit was void and that the plaintiff could not operate the abattoir under such permit. Under the provisions of the charter of the City of Thomson, the city council, and not the mayor, is authorized to issue permits and licenses. Reverting again to *City of Thomson* v. *Davis,* supra, this court said: "The acts of the governing authorities of the city here complained of constituted neither a taking nor a damaging for public purposes, but were an unlawful attempt on the part of the governing authorities to regulate the use of the property of the owner for his own purposes. This is the construction given by a majority of the courts of this country to similar constitutional provisions. In 11 Am. Jur. 1005, § 266, it is stated: 'Acts done in the proper exercise of the police power, which merely impair the use of property, do not constitute a taking within the meaning of the constitutional requirement as to the making of compensation for the taking of property for public use, and accordingly do not entitle the owner of such property to compensation from the State or its agents, or give him any right of action for the injuries sustained.' . . But where no law or ordinance is under attack, and where the subject matter is such as to come under the valid exercise of police power (as slaughterhouses were declared to be in the *Cutsinger* case, supra) no case is made which would entitle the plaintiff to compensation for a 'taking for public purposes.' . . In the present case, title to the property and its possession, physically unimpaired, remain in the owner and only the use is sought to be restricted. This does not establish a cause of action against the city for money damages.

"The contention in the remaining count that the defendant became liable because its action deprived the plaintiff of his property without due process of law is not well taken. Being ex parte, the revocation of the license was void, and he did not need to pay any attention to it unless his continued operation of the business would subject him to penal action on the part of the city, in which case he would have his remedy by injunction to keep the defendant from interfering with his proper use of

the property. *Carey* v. *City of Atlanta*, 143 *Ga.* 192 (2) (84 S. E. 456, L.R.A. 1915D, 684, Ann. Cas. 1916E, 1151) ; *Cutsinger* v. *City of Atlanta*, supra; *New Mission Baptist Church* v. *City of Atlanta*, 200 *Ga.* 518 (37 S. E. 2d 377) ; *City Council of Augusta* v. *Sanders*, 164 *Ga.* 235 (138 S. E. 234). Obviously the plaintiff has not been deprived of his property, although the action was without due process of law. He still has his property and he has the right to operate." It thus follows that under the authorities cited and the conclusions reached in *City of Thomson* v. *Davis*, supra, the plaintiff in the instant case could have, with impunity, ignored the notice from the defendant and then retained the right to use his property.

The effect of the provisions of Code § 69-208 is to create liability against municipal officers under such conditions when they commit a tort, as provided in Code § 105-101, which reads as follows: "A tort is the unlawful violation of a private legal right."

Code § 105-104 provides: "Private duties may arise from statute, or flow from relations created by contract, express or implied. The violation of any such specific duty accompanied with damage shall give a right of action."

In *Rossignoll* v. *Northeastern Railroad*, 75 *Ga.* 354, the Supreme Court in referring to a tort action said: "To entitle a party to such an action there must be a violation of right, accompanied with damage."

It must be kept in mind that there are three essential elements to a cause of action in tort: (1) A right; (2) its violation; (3) damage. We may assume, without deciding, that the plaintiff had a vested right in the permit. Such right alone is not sufficient to enable the plaintiff to maintain his action in the case now before us. It is incumbent upon the plaintiff to go further and show that there was a violation of that right. The revocation of his license was void. Under the allegations of the petition there was no violation of the plaintiff's right by the defendant, because the defendant did not take or damage his property (the property of the plaintiff) for public purposes and he did not revoke or attempt to revoke the plaintiff's license. The plaintiff must show damage. No damage has been shown in the instant case. The title to the plaintiff's property and its

possession is physically unimpaired and remains in him. The plaintiff still has his property and the right to use it. If that right is interfered with, he has his remedy to protect his right by injunction. See *Peginis* v. *City of Atlanta*, 132 *Ga.* 302 (63 S. E. 857, 35 L.R.A. (NS) 716); *City Council of Augusta* v. *Sanders*, 164 *Ga.* 235 (138 S. E. 234); *New Mission Baptist Church* v. *City of Atlanta*, 200 *Ga.* 518 (37 S. E. 2d 377).

2. The plaintiff, in support of his contention ·that the court erred in sustaining the demurrer to his petition, calls our attention to *Kitchens* v. *Jefferson County*, 85 *Ga. App.* 902 (70 S. E. 2d 527). In that case the defendants committed overt acts in tearing away a brick wall, placing a culvert in a ditch, tearing up iron stakes, cutting tree limbs and making a roadway over graves. Doing such acts inflicted actual damage on the property and did not leave it physically unimpaired. Also, our attention is called to *Stembridge* v. *Wright*, 32 *Ga. App.* 587 (124 S. E. 115). That case shows overt acts committed by the defendant in making an illegal arrest and imprisonment, thereby depriving the defendant of his liberty and not leaving him physically unimpaired. Our attention is called also to *Atlanta* v. *Gate City Gas Light Co.*, 71 *Ga.* 106, and *City of Summerville* v. *Georgia Power Co.*, 205 *Ga.* 843 (55 S. E. 2d 540). The principal law, applicable under the facts of those cases, is not applicable in the instant case. In those cases the principle of estoppel was involved. "Estoppel merely precludes from setting up a defense, but creates no new right of action in the opposite party." See also *City of Thomson* v. *Davis*, supra. Our attention is called also to *Pruden* v. *Love*, 67 *Ga.* 190. In that case the plaintiff had been notified of a meeting at a specific time at which his case would be heard. The time of the meeting was changed without notice to the plaintiff. The demolition of his property was approved and the building was demolished. Such are not the facts in the instant case. Also, our attention is called to *City of Atlanta* v. *Dooly*, 74 *Ga.* 702. In that case the billboard of the plaintiff was actually destroyed. The property of the plaintiff was physically impaired. The damage to the property was committed by overt acts, thus the· legal prerequisites for the commission of a tort were shown by the existence of a right, its violation, and damage.

The court did not err in dismissing the plaintiff's petition on the general demurrers in each instance.

*Judgment affirmed. Felton, C. J., Carlisle and Quillian, JJ., concur. Townsend and Nichols, JJ., dissent.*

TOWNSEND and NICHOLS, JJ., dissenting. 1. We dissent from the majority opinion, for the reason that we think the first three counts of the petition set out a cause of action against the Mayor of Thomson individually as against general demurrer. We disagree with the opinion, insofar as the first three counts are concerned, in that it appears to rely upon *City of Thomson* v. *Davis* ante, p. 216, as authority for the proposition that no cause of action is stated against Johnson, Mayor, as an individual. *City of Thomson* v. *Davis* was an action against a city in the exercise of a governmental function which was sought to be predicated upon a taking of private property for public purposes. It therefore bears no relation to the present case (except to some extent insofar as count 4 of this petition is concerned) in that the defendant is different, the act alleged to constitute the tort is different, certain factual allegations of the petition are different, and the liability imposed by law upon the named defendant is also different.

We also disagree with the first sentence of the opinion to the effect that the only basis of liability alleged against the defendant Johnson is that he notified the plaintiff that the permit issued was void. This petition shows far more than mere notification. Taking it, together with the charter provisions of which this court takes judicial notice, it must be taken to allege that the municipal government of the city is vested in a mayor and four councilmen; that the mayor does not vote on legislative matters except in case of tie; that he exercises the power of veto; that he is the chief executive officer and shall see that all laws and ordinances are faithfully executed; that he has general jurisdiction of the affairs of the city and all police officers come under his jurisdiction; that he has power to punish for contempt and to preserve the peace and also has certain judicial powers; that the mayor and council have power to issue building permits and also to grant and revoke licenses; that the mayor (apparently without any action on the part of the city council) in his official capacity "signed a permit which granted to plaintiff the right to erect a building for the purpose of equipping and operating

therein an abattoir"; that the building was erected in reliance upon this permit, and that, after it was completed but before operation thereof commenced, the defendant, again in his official capacity, notified the plaintiff that the permit was void, that he could not operate the abattoir, that the defendant would prevent and prohibit him from operating the same and from exercising any of the rights conferred by the permit which he had signed and issued.

Under this statement of fact, this court need not decide whether or not the allegations are sufficient to show that the permit was in fact a void permit. If it was void, and the defendant maliciously or oppressively or without authority of law allowed the plaintiff to presume it was valid until he had spent a considerable amount of money and had reached the point of commencing operations to realize an income from his investment, and then informed him he could not proceed thereunder, he had violated the plaintiff's rights and the plaintiff was injured. If, on the other hand, the permit was valid, and the defendant allowed the plaintiff to obtain it and proceed to make a large investment under its authority and then (the plaintiff having done no act which created a nuisance or in any way changed the situation except by spending money as authorized under the permit) the defendant undertook, as an executive officer in charge of the city police force, to prevent him from exercising his rights thereunder by maliciously or oppressively or without authority of law telling him, as such executive officer, that he would prevent him from exercising his rights thereunder, then also the plaintiff's rights had been violated and he was damaged thereby. It was not necessary for the plaintiff to do any overt act which would cause his arrest, it being obvious that to disregard the prohibition would only lead to further difficulties. *City of Atlanta* v. *Dooly*, 74 *Ga.* 702.

The allegations of the petition are sufficient as against general demurrer, construing them most strongly against the pleader, to authorize the inference that the mayor would use the police force at his command in order to prevent the operation of the abattoir, the petition alleging that "defendant in his official capacity as mayor notified plaintiff that he could not operate said abattoir" and that he in such capacity would "prevent plaintiff

from operating said abattoir." The plaintiff had a right to assume that any attempt on his part to operate the abattoir subsequent to such notice would bring about this result. Under the allegations of the petition taken in connection with the provisions of the city charter it is obvious that some of these acts, at least, were done without authority of law. Without regard, therefore, to the question of whether malice or oppression alone would sustain a cause of action for acts done *within* legal authority, it is obvious that counts 1 and 2 set out a cause of action for acts done maliciously or oppressively *and* without legal authority. Count 3 alleges the conduct of the mayor complained of to be without legal authority but does not allege that it was malicious or oppressive. Code § 69-208 provides: "Members of the council and other officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers, if done oppressively, maliciously, corruptly, or without authority of law." Counts 1 and 2 are sufficient to show the conduct of the mayor to be without legal authority without a specific allegation to that effect, and count 3, wherein it is specifically alleged that the conduct of the mayor was without authority of law, is sufficient to show that it was oppressive. Accordingly, these 3 counts set out a cause of action for special damages under the authority of *Pruden* v. *Love*, 67 *Ga.* 190, from which case the Code section upon which this action is based was taken. Whether or not the correct measure of damages has been set out is not taken before the court, this case being here on the sustaining of the general demurrer only. *Horwitz* v. *Teague*, 77 *Ga. App.* 386, 389 (48 S. E. 2d 697). We are of the opinion, however, that the sustainable special damages would be those resulting from the delay suffered by the plaintiff in putting his business into operation, together with punitive damages if such were sustainable under the evidence, and not the full value of the premises or the cost of construction.

2. Count 4 predicates damages upon the taking or damaging of private property for public use without just compensation, and the deprivation of property without due process of law. It was held in *City of Thomson* v. *Davis*, supra, that there was no "taking" where the title of the property remained in the plaintiff and only the use thereof was impaired. The same situation

868

would apply to the allegations of the petition here, and would, of itself, suffice to show that this count sets out no cause of action without dealing with the powers of the defendant, in any event, to condemn property, a function of government which does not belong to private citizens such as the mayor of a city who is sued individually for torts committed in his official capacity. A private citizen who took the property of another would be liable for a trespass or conversion; a municipal corporation, on the other hand, may, by following legal means and paying just and adequate compensation, do so as one of the sovereign powers delegated to it. We therefore agree that no cause of action is set out in count 4 of the petition.