Mike SOKOLIC, d/b/a Coastal Book
Mart, Plaintiff,

v.

Leo B. RYAN, Chief, Savannah Police Department, Andrew J. Ryan, Jr., J. Curtis Lewis, Jr., Picot B. Floyd et al., Defendants.

Civ. A. No. 2501.

United States District Court
S. D. Georgia.

Sept. 18, 1969.

Supplemental Order Sept. 19, 1969.

Bobby F. Herndon, Savannah, Ga., Robert Eugene Smith, Towson, Md., for plaintiff.

Jack H. Usher, Andrew J. Ryan, III, Savannah, Ga., for defendants.

## ORDER

LAWRENCE, Chief Judge.

Petitioner is engaged in the business of selling hardbound and paperback books, newspapers, movie films and a wide variety of magazines. The Coastal Book Mart at 212 West Broughton Street was his outlet in Savannah. The store operated under a business license issued by the Mayor and Aldermen. On July 16, 1969, officers of the Savannah Police Department entered the place and arrested Petitioner's employee who was charged with violation of Title 26–2101 Ga. Code (the obscene literature statute). Large quantities of materials were seized and are still being held by the Police Department. At the time of the seizure and arrest, a thirteen-year-old boy was in the store. In addition to the arrest and seizure of merchandise, Petitioner's business license was removed from the wall by an official in the City Manager's office who accompanied the policemen.

The taking of Petitioner's license was presumably the temporary suspension, pending a hearing on permanent revocation, as authorized by the City of Savanah Revenue Ordinance of 1969, License, Section 1.

On the day following the initial arrest Petitioner, with advice of counsel, reopened the store and did business as before. Shortly, the authorities appeared and re-arrested the employee. He was charged with operating an unlicensed business contrary to Section 8 of the ordinance referred to. The store was padlocked and remains so. Plaintiff has been deprived of access to the materials therein.

Plaintiff alleges that defendants, acting under color of State law in derogation of the Fourteenth Amendment, have deprived him, without due process, of his First Amendment right to freedom of expression by utilizing constitutionally defective criminal and civil procedures calculated to suppress the sale of protected literature. Petitioner asks (1) that this Court hold that Ga. Code, Title 26, § 2101 has been unconstitutionally applied and enjoin all criminal prosecutions arising out of the events of July 16; (2) that it order all materials seized to be returned; (3) that it rule the Savannah licensing ordinance in question to be unconstitutional, reinstate the suspended license and enjoin the prosecution for operating without a license; (4) that it order defendants to refrain from utilizing such procedures in the future; and (5) that the Court award

money damages against the defendants. Plaintiff's motion for a temporary restraining order was denied and the matter came on for hearing before this Court on August 5, 1969, on motion for a preliminary and permanent injunction.

Following the hearing, I examined some of the materials taken by the police authorities for evidentiary purposes. All of them are unspeakably obscene—a shameless parade of scatology, lesbianism, homosexuality, genetalia—an alpha-omega of prurient appeal to perverted sex appetite. The huge circulation of the mephitic filth flooding this nation is as much an indictment of the gutter instincts of a large segment of the population as it is of the purveyors who blatantly profit from the preoccupation of many Americans with ordure and depravity.

▪ Obscenity is not protected by the First Amendment. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. But this does not mean that literature (there must be a better word) which is in fact obscene is not entitled to the same procedural safeguards that are thrown around non-obscene materials. Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809; Tyrone v. Wilkinson, 4 Cir., 410 F.2d 639; Metzger v. Pearcy, 7 Cir., 393 F.2d 202; Central Agency, Inc. v. I. W. Brown et al. (N.D. Ga. No. 13023). One procedural protection afforded publications regardless of the eventual evaluation or characterization of same is the requirement that materials may not be seized prior to a judicially conducted adversary proceeding in which same is found in fact to be obscene. *Quantity of Copies of Books, supra; Metzger, supra;* Cambist Films, Inc. v. State of Illinois, 292 F. Supp. 185; United States v. 18 Packages of Magazines, D.C., 238 F.Supp. 846; Sherpix, Inc. and Craddock Films, Inc. v. McAuliffe et al. (N.D.Ga.No.13024).

▪ Seizure and confiscation of materials in advance of an adversary hearing on the issue of obscenity is now prohibited by the First Amendment. Whether such protection extends as well to criminal prosecutions is another matter. A criminal proceeding cannot be founded upon evidence obtained by a search conducted prior to the adversary proceeding which is required before a civil seizure and forfeiture. United States v. Brown, D.C., 274 F.Supp. 561; Evergreen Review, Inc. v. Cahn, D.C., 230 F.Supp. 498; Flack v. Municipal Court, 66 Cal.2d 981, 59 Cal.Rptr. 872, 429 P.2d 192 (Cal.1967). However, the courts have not interdicted up to this time the institution of criminal proceedings (and trial) prior to an adversary hearing where the evidence relied on is obtained through purchase or other legal means. For example, in Tyrone Inc. v. Wilkinson, 410 F.2d 639 the Court of Appeals for the Fourth Circuit held the seizure of a motion picture film to be illegal but refused to enjoin a state criminal obscenity prosecution for possessing and showing same where there had been no adversary judicial proceeding. The Court said:

"Comity dictates denial of federal injunctive relief against state prosecutions that challenge First Amendment rights when it does not appear that the accused have 'been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford [the accused] any protection which they could not secure by prompt trial and appeal pursued to this Court.' Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943); cf. Broyhill v. Morris, 408 F.2d 820 (4th Cir. 1969)."

The idea that a criminal prosecution and threats or probability of further prosecutions does not chill one's First Amendment rights is judicial illusion. That fact was recognized in Dombrowski

v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. There the Supreme Court enjoined prosecutions under Louisiana's Subversive Activities Act where the statute was facially unconstitutional and where the authorities continued to prosecute under it. *Dombrowski* would not seem to apply to criminal prosecutions commenced under ostensibly valid state statutes whose constitutionality is not challenged. However, an extension of the teaching of that case has been seen in several recent First Amendment cases. In Bee See Books, Inc. v. Leary, 291 F.Supp. 622 a New York District Court recognized that practices short of actual seizure of books may operate to deny constitutional rights and enjoined the defendants in a case where police officers were constantly present in the book store. In Poulos v. Rucker, 288 F.Supp. 305 an Alabama District Court, citing Bantum Books v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584, recognized that criminal prosecution or the threat thereof prior to an adversary determination of obscenity constitutes an unconstitutional burden upon freedom of expression. In that case, however, the controversial materials were declared to be non-obscene and it was therefore unnecessary to enjoin state prosecution.

The most recent case appears to be Delta Book Distributors et al. v. Cronvich et al. (E.D.La. 304 F.Supp. 662). There, Judge Boyle, speaking for a Three-Judge District Court, said: "Since prior restraint upon the exercise of First Amendment rights can be exerted through seizure (with or without a warrant) of the allegedly offensive materials, arrest (with or without a warrant) of the alleged offender or through the threat of either or both seizure and arrest, the conclusion is irresistible in that none of these may be constitu-

tionally undertaken prior to an adversary judicial determination of obscenity."

The Court did not enjoin the state court but indicated that its holding should be sufficient to produce the same result without a restraining order.

I take the same course in the present case. Any criminal prosecution here prior to an adversary hearing and without plaintiff having the subsequent opportunity to refrain from selling materials determined to be obscene is violative of his First Amendment rights. The materials seized were unconstitutionally taken. For all their filth, they must be returned to their pandering vendor.

■■ The question remains as to the business license revocation and the applicability of First Amendment standards to the municipal actions in this case. Plaintiff challenges the constitutionality of the City licensing ordinance which provides for a temporary *ex parte* suspension by the City Manager and permanent suspension by the Mayor and Aldermen after a hearing in the case of businesses "directly affecting public morals."[1] A municipality's right under its police power to prevent public indecency is vital to local government and the power exists to suspend *ex parte* a business license in a proper case where public morals are threatened. Cutsinger v. City of Atlanta, 142 Ga. 555, 83 S.E. 263; Duke v. Mayor and Council of City of Rome, 20 Ga. 635; City of Thomson v. Davis, 92 Ga.App. 216, 88 S.E.2d 300; Jones v. City of Atlanta, 51 Ga. App. 218, 179 S.E. 922. The ordinance in question does not specifically include businesses that come within the protection of the First Amendment. The summary procedure provided is presumably

1. " * * * the Mayor and Aldermen may by resolution without notice to the licensee and with or without cause revoke any license having to do with the operation of a business involving alcoholic beverages, dance halls, drugs, or narcotics, and any other business directly involving public morals, public health or

public welfare; provided, however, that the City Manager may temporarily suspend licenses, permits or other grants to conduct business pending a hearing and final action by the Mayor and Aldermen." City of Savannah Revenue Ordinance of 1969, License, Section 1.

designed for the innumerable situations outside the constitutionally protected area. I find that although the ordinance may have been unconstitutionally applied in the present situation it has a constitutionally permissible purpose and is not facially invalid.

The ordinance was used to close a business which is within the protection of the First Amendment. That in the closing of it plaintiff's right to sell reading and visual materials was violated is undisputable in the light of Quantity of Copies of Books v. Kansas, *supra*. It would seem to be an anomaly if the courts were to protect freedom of expression from police encroachment by demanding compliance with due process and allow total suppression of such rights by authorities under municipal procedures inconsistent with those applicable to criminal procedures. Was plaintiff adequately protected by the municipality's license revocation procedure?

The license was seized on July 16; the store padlocked on the 17th without any hearing. On July 25 one was conducted before the Mayor and Aldermen. Plaintiff was notified. Assuming for the purpose of argument the power of City Council to conduct the adversary hearing required by the First Amendment, was such a hearing ever held? Recent cases cited above make it clear that suppression of the dissemination of literature can occur only when one sells or offers for sale materials that have been previously declared obscene in an adversary proceeding. In the present case the adversary proceeding, if such it was, was conducted after, not before, the suppression. It could not validate the padlocking even if the materials were found by the Council to be obscene.

The City Attorney argues that the case presents an exception to the rule because of the presence within the store of a minor. According to counsel, this nullifies all the procedural safeguards to which plaintiff would be entitled in the event that adults were the only patrons. A deposition of the teenage boy was taken by order of the Court. He was in the store and saw various publications claimed to be obscene. The boy was unusually large for his age and when asked for proof of age by the operator of the book shop he replied that he was nineteen.

There is nothing in the deposition to show that plaintiff did not make a good faith effort to ascertain the boy's age nor was any evidence offered at the hearing other than this one fleeting contact to indicate that plaintiff did business with minors. On the other hand, I cannot conclude that plaintiff was not in fact doing business with minors. I must therefore consider the procedural aspects of that possibility.

Under the decision in Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 a state has an independent and special interest where minors are involved and possesses broader regulatory powers over the sale of literature in such cases. The Court cited People v. Kahan, 15 N.Y.2d 311, 258 N.Y.S.2d 391, 206 N.E.2d 333 where it was said, "It is, therefore, altogether fitting and proper for a state to include in a statute designed to regulate the sale of pornography to children special standards, broader than those embodied in legislation aimed at controlling dissemination of such material to adults."

Although a state's right to define obscenity in respect to minors is broad, it is only implied that the state may exercise the same discretion in establishing procedures for enforcement of such statutes. Counsel for the City argues that where minors are involved due process may be virtually dispensed with and that in no event is a prior adversary hearing procedure required as under the general obscenity statute. It is their contention that a

state may summarily repress sale of literature to minors under seventeen.[2]

■ What procedures have been established by the State of Georgia in the case of sales to minors of obscene materials? Under its most recent statute pertaining to that subject (Ga. Laws 1969, Vol. I P. 222–227) no person may be prosecuted for a violation thereof "unless the district attorney of the judicial circuit in which the crime occurs has served the accused with prior written notice that the district attorney has determined the material upon which the prosecution is based to be in violation of this Act and the accused has, after receiving such notice, violated the terms of this Act." Whether this procedure affords a seller of literature to minors constitutional due process is not to be determined here. Since no criminal prosecution of a vendor of literature where a minor is involved can be instituted until notice is given, I must hold that civil suppression by license revocation must likewise be preceded by notice and the opportunity to refrain from selling what is found to be obscene.

■ In the present case there was no such prior determination or notice by the district attorney or the City Manager before suspension of the business license. For that reason, even assuming that plaintiff actively and intentionally offered obscenity for sale to minors, the revocation on that ground was uncon-

stitutional and was not rendered valid retroactively by the subsequent hearing in City Council. Plaintiff's business license must be reinstated and the prosecution for operating without same discontinued.[3]

To this sorry pass has come the efforts of state and municipal authorities to stem the pornographic flood which sweeps the land. But this decision does not mean that prosecutions for obscenity are wholly impractical and that the enforcement officers should throw up their hands. Difficult and cumbersome are obscenity prosecutions. Impossible they are not. State officers should not conclude that the First Amendment throws an impenetrable mantle of protection over obscenity. The Constitution offers no protection to pornography without redeeming literary or artistic qualities. What the courts have done, clumsily perhaps, is to try to strike a balance between private and public rights—the right of an individual to free, legitimate expression, on the one hand, and, on the other, the right of the public to be free from that expression which is obscene. There is nothing to prevent diligent state prosecutors from instituting adversary proceedings before a judicial officer through notice to the distributor and a subpoena duces tecum directed to it with the name of each questionable and challenged publication. Following a judicial determination of obscenity the state au-

2. What constitutes due process in seizures or prosecutions where sales to minors are involved is unclear. *Ginsberg* does not elaborate on the "special interest" principle as related to suppression. In United States v. 4400 Copies of Magazines, etc., D.C., 276 F.Supp. 902 at 903 the Court expressed the opinion that where minors are involved there is no First Amendment protection at all.

3. My opinion implies that a municipality through its city council, under its licensing ordinances, may regulate the sale of obscene literature if the procedures accord with those prescribed for criminal

prosecutions and forfeitures. Recent decisions, however, indicate that any licensing program which in fact operates as censorship may be in violation of the First Amendment. Red Lion Broadcasting Co. v. F.C.C., 127 U.S.App.D.C. 129, 381 F.2d 908; cert. granted 389 U.S. 968, 88 S.Ct. 470, 19 L.Ed.2d 458; Radio Television News Directors Ass'n. v. United States, 7 Cir., 400 F.2d 1002; Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225; Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L. Ed.2d 162 (1969).

thorities may seize and prosecute if the publications and materials are put on sale. And this is all the clearer where State procedures are modernized.

This 18th day of September, 1969.

## SUPPLEMENTAL ORDER

In the above action plaintiff seeks various types of injunctive relief, including a restraining order prohibiting continued criminal prosecutions under Title 26, § 2101 Georgia Code for selling obscene literature on and prior to July 16, 1969. In its order of September 18th, this Court suggested that in light of the authority of Delta Book Distributors et al. v. Cronvich et al. (E.D. La., 304 F.Supp. 662) criminal prosecution arising out of the events of July 16th would be contrary to the First and Fourteenth Amendments of the Constitution. Although I did not actually enjoin further prosecution I indicated that the same would be unconstitutional.

Since the release of my opinion it has been brought to my attention that a Three-Judge District Court in the Middle District of Georgia was confronted in the case of Carter et al. v. Gautier et al. (M.D.Ga.), 305 F.Supp. 1098 with the same question. On September 15th last, it decided the issue contrary to *Delta, supra.*

For this reason I feel that I should modify my order of September 18th. I do so as follows:

All criminal charges under Ga.Code Title 26, § 2101 arising out of the events of July 16, 1969, may be prosecuted to completion at the discretion of the District Attorney. Materials seized illegally may not, however, be used as evidence in any such prosecution. This ruling in no way affects the remainder of my opinion, including return of materials and reinstatement of plaintiff's business license by the Mayor and Aldermen.

This 19th day of September, 1969.